(No. 12684.—Decree affirmed.)

THE AMERICAN CAN COMPANY, Appellant, *vs.* LOUIS L. EMMERSON, Secretary of State, Appellee.

*Opinion filed June 18, 1919.*

1. CORPORATIONS—*section 5b of Foreign Corporations act, as amended in 1917, does not impair the obligation of contracts.* Section 5b of the Foreign Corporations act, as amended in 1917, providing the method by which the proportion of the capital stock of foreign corporations represented by their property and business in Illinois shall be estimated and for assessment of additional fees thereunder, does not impair the obligation of contracts made by the issuance of licenses to such corporations under the act of 1897, as amended in 1899.

2. SAME—*section 5b of the Foreign Corporations act does not discriminate against foreign corporations.* Section 5b of the Foreign Corporations act, as amended in 1917, merely provides a just method of estimating the proportion of the capital stock of foreign corporations represented by their property and business in Illinois and does not discriminate against such corporations in favor of domestic corporations of like character.

3. SAME—*when tax on a foreign corporation does not impose burden on inter-State commerce.* While the State may not regulate inter-State commerce nor impose burdens thereon it is authorized to levy a tax within its authority, measured by the capital stock of a foreign corporation in part used in the conduct of such commerce; and where the circumstances are such as to indicate no purpose or necessary effect to burden such commerce, it may require a license fee based upon the proportion of capital stock represented by the property and business of such corporation in the State.

4. SAME—*words "capital stock" in the Foreign Corporations act mean stock authorized by charter.* The words "capital stock," in section 5b of the Foreign Corporations act, as amended in 1917, providing a method of estimating the proportion of the capital stock of foreign corporations represented by their property and business in Illinois, mean the capital stock authorized by charter and not the stock actually issued.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

288 — 19

TENNEY, HARDING & SHERMAN, (HORACE KENT TEN-
NEY, and HARRY A. PARKIN, of counsel,) for appellant.

EDWARD J. BRUNDAGE, Attorney General, CLARENCE N.
BOORD, and JAMES W. GULLETT, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is brought to this court on appeal from a
decree of the circuit court of Sangamon county sustaining
the demurrer of the appellee to the bill of complaint of the
appellant and dismissing the bill for want of equity. By
the bill of complaint the appellant seeks to restrain the Sec-
retary of State of Illinois from paying over to the State
Treasurer the license fee collected from the appellant by
the Secretary of State under the amendment to the Cor-
poration act approved June 22, 1917. Upon demand by
the Secretary of State the appellant, under protest, paid
the fees under said act as amended in the amount de-
manded   A stipulation was entered into that the money
should be retained by the Secretary of State pending the
determination of this cause, and a temporary injunction
was ordered by the court continued pending this appeal.

The appellant is a foreign corporation organized under
the laws of New Jersey. On July 8, 1901, it filed an ap-
plication on the form provided by the Secretary of State
for a license as a foreign corporation to do business in the
State of Illinois and fully complied with the statute then
in force and with the requirements of the Secretary of
State. A license was issued to the appellant under the pro-
visions of the act of May 26, 1897, as amended by the act
of April 22, 1899, entitled "An act to amend an act entitled
'An act to require every foreign corporation doing business
in this State to have a public office or place in this State
at which to transact its business, subjecting it to a certain
condition, and requiring it to file its articles or charter of

incorporation with the Secretary of State, and to pay certain taxes and fees thereon.'" (Laws of 1899, p. 118.) Section 3 of said acts reads in part as follows:

"Such corporation, by its president, secretary or any officer thereof, shall make and forward to the Secretary of State, with the articles or certificate above provided for, a statement duly sworn to of the proportion of capital stock of the said corporation which is represented in the State of Illinois by its property located and business transacted therein and such statement shall further show the name and address of the agent or representative of said corporation in this State; and such corporation shall be required to pay into the office of the Secretary of this State, upon the proportion of its capital stock represented by its property and business in Illinois, fees equal to those required of similar corporations formed within and under the laws of this State. Upon a compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this State, and is authorized to do business therein, stating the amount of its entire capital and of the proportion thereof which is represented in Illinois; and such certificates shall be taken by all courts in this State as evidence that the said corporation is entitled to all the rights and benefits of this act, and such corporation shall enjoy those rights and benefits for the time set forth in its original charter or articles of association, unless this shall be for a greater length of time than is contemplated by the laws of this State, in which event the time and duration shall be the limit of time set out in the laws of this State. Such corporations having complied, as aforesaid, shall be required to promptly report to the Secretary of State any change in the name and address of its agent or representative in this State, and any increase or decrease in its capital stock, and any increase or decrease of the proportion of its capital stock represented in this State by its property and

business therein, by filing in the office of the Secretary of State a statement properly sworn to setting forth the facts."

The application thus filed with the Secretary of State set forth the authorized capital stock at $88,000,000, and the proportion of the stock represented by the property located in and the business transacted in Illinois at the time the application was placed, at $1,000,000. The fee was based upon one-eighty-eighth of its authorized capital stock and was fixed at $1045, which was paid by the applicant and a license issued to it under the seal of the State of Illinois, setting forth that appellant had filed a copy of its charter and had in all respects complied with the law governing foreign corporations, and that "said American Can Company is from the date hereof duly authorized to do business in the State of Illinois for a term of ninety-nine years and is entitled to all the rights and privileges granted to foreign corporations under the laws of this State; that the amount of capital stock of said corporation is $88,000,000 and the amount of capital stock represented in the State of Illinois is $1,000,000." Thereupon the appellant began transacting business in the State of Illinois and has been carrying on a large volume of intra-State and inter-State business, invested large sums in factories having an appraised value of several million dollars, including real estate, plants, machinery, etc., and employed a large number of persons in its business. In March, 1918, the Secretary of State submitted to appellant interrogatories under the amendment of June 22, 1917, to which appellant filed answers showing in detail the total value of all its property, both real and personal; the assessed and appraised value of its tangible property in Illinois; the total amount of its entire business for the preceding year, both in and out of Illinois; the location of its principal places of business in the different States; its authorized capital stock to be $88,000,000, of which $82,466,600 had been issued; the estimated annual business transacted by appellant at and

from places of business in Illinois, including sales to residents of Illinois, to be $19,536,930.37, and the amount of sales made to residents of Illinois to be $10,029,000. On receipt of these answers submitted by appellant the Secretary of State wrote to appellant as follows: "From the answer to the interrogatories it would appear that .09745 of the tangible property and business of the corporation is represented in Illinois. This will require the corporation to pay upon $8,576,000 of the capital stock, or a fee of $8621. Allowing a credit of $1045, (the fee paid heretofore,) there is a balance of $7576 due the State, which you will please remit in accordance with section 5c of the Foreign Corporation act." The only change in the situation of appellant since the license was issued is in the amount of its property and business in the State of Illinois upon which it has paid to the State the taxes regularly assessed.

It is contended by the appellant that the license issued to do business in this State under the Corporation act in force at the time is a contract between the State and appellant, which cannot be changed or modified to require appellant to make further payments unless by a general law similar payments are required of domestic corporations under the same circumstances; that the amendment of 1917 impaired the obligations of this contract and imposed a tax, which amounted to an interference with inter-State commerce, denied appellant the equal protection of the laws and took its property without due process of law, and that the act of 1917 is void under the State and Federal constitutions; that the fee should be based upon the capital stock actually issued and not upon the authorized capital stock; that the amendment of 1917 creates a different basis for the license fee than was fixed by the statute at the time the license was issued.

It is contended by the appellee that the words "capital stock" in the Foreign Corporation act at the time the license was issued to appellant, as well as in the amendment

of 1917, mean the authorized capital stock fixed by the charter and not the capital stock actually issued at the time the license was granted; that foreign corporations are subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State and that said tax is not a discrimination; that the charging of additional fees in case of change in the. capital stock represented in this State was permitted under the law in force at the time the license was issued to appellant; that the amendment of 1917 is not a new basis upon which the fees shall be based but is a method or rule whereby to compute and determine the capital stock represented.

Section 5*b*, as amended in 1917, is the section of the act complained of. That section made it the duty of the Secretary of State from time to time to ascertain by interrogatories propounded to foreign corporations doing business in this State, "the proportion of capital stock actually being represented by property located and business transacted in the State of Illinois, which proportion shall be determined by averaging the percentage of the total business of the corporation transacted in Illinois with the percentage of the total tangible property located in this State. If no tangible property is used in the business of the corporation, the proportion of capital stock represented shall be determined with reference only to the percentage of the total business of the corporation transacted in Illinois." (Laws of 1917, p. 306.)

It is admitted by appellee that the license granted to appellant in 1901 is a contract, and that if the amendment of 1917 were to be held to violate said contract such amendment would be unconstitutional as an impairment of the obligations of a contract; but it is insisted that the act is not open to this objection. In support of the contention of the appellant that this amendment violates its contract as evidenced by the license issued in 1901, it is urged that the

original license fixed the amount of the fee on the basis of facts existing at that time for ninety-nine years and recited that a full compliance had been made with the statute; that when this fee was paid it represented the entire fee required or to be required of appellant.

An examination of the laws in effect at the time this license was given discloses the following: Section 26 of the Corporation act of 1872 provided as follows: "Foreign corporations, and the officers and agents thereof, doing business in this State, shall be subjected to all the liabilities, restrictions and duties that are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers." This section was in force July 9, 1901, and is still in force. The fees required of all corporations organized under the laws of this State were fixed by the act of 1895. (Hurd's Stat. 1917, par. 10a, p. 1504.) That act was in force July 1, 1901, and is still in force. Section 26 of the act of 1872, as herein quoted, is re-enacted in section 1 of the act of 1897 as amended in 1899, under which appellant's license was issued. ·

It will be seen that these several acts upon which the contract of appellant was based provided that foreign corporations shall be subjected ·to all liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State. This act was a part of the contract of appellant. The law also provided, as we have seen, that a foreign corporation which has complied with section 2 of the act of 1899, and to which a license has been issued, shall be required to report to the Secretary of State, on inquiry, among other things, any increase or decrease in its capital stock and any increase or decrease of the proportion of its capital stock represented in this State by its property and business therein. This provision was also a part of the contract of appellant when the license was issued. It is and

has been an underlying principle in the policy of this State in its treatment of foreign corporations that they shall be subjected to the same rights and liabilities as domestic corporations of like character. This provision has been enacted in practically every corporation law since 1872, and the inquiry here is whether or not this contract, based, as it is, upon this provision of the statutes, is being violated by this act. If treatment is thereby accorded appellant not accorded domestic corporations then the act is void, as by section 26 foreign corporations are not to be subjected to greater liabilities or restrictions than domestic corporations under like circumstances. On the other hand, if they are accorded such treatment the act is not invalid for the reasons urged. *Stevens* v. *Pratt,* 101 Ill. 206; *Granite State Provident Ass'n* v. *Lloyd,* 145 id. 620.

It is urged that this payment at this time is an additional payment for a vested right such as is not required of domestic corporations, and in support of this contention *American Smelting and Refining Co.* v. *Colorado,* 204 U. S. 103, is cited. In that case the American Smelting and Refining Company had paid a fee based upon its entire capital stock at the time of its admission to the State. Thereafter the legislature passed a law levying an annual license tax of two cents on each $1000 of the capital stock of domestic corporations and four cents on each $1000 of the capital stock of foreign corporations. Colorado had on its statute books at that time an act in substance identical with section 26 of the act of 1872 herein referred to. The United States Supreme Court in that case held, in view of the fact that the American Smelting and Refining Company had paid all fees assessed by that State against domestic corporations, that the new law was in violation of the contract of that State with said company based upon the statute making foreign corporations subject only to the same restrictions, liabilities and duties imposed upon domestic corporations, and was therefore void. That case is to be

distinguished from the case at bar in this: that there the foreign corporation had paid a fee based upon its entire capital stock, while here the fee paid by appellant was based upon one-eighty-eighth of its entire capital stock. Therefore, instead of being discriminated against by the payment of this further fee, it is apparent that appellant has not yet paid the amount of fee which a domestic corporation of like character, with like capital stock, must pay before it is allowed to do business. While the license granted to appellant was a vested right it was vested subject to the terms of the contract, and the laws in existence in this State at the time of the issuance of the certificate of license must be incorporated therein. We have seen that its contract, as represented by the law, provided that it should report on interrogatories, from time to time, touching the proportion of its stock represented here by its property and business; also that it was to be subjected to the same liabilities that domestic corporations are subjected to. The only purpose which the legislature could have had in requiring further reports on increase or decrease of the proportion of the capital stock represented by the business and assets of foreign corporations within the State was that such reports might form a basis for according to such foreign corporations the same treatment accorded to domestic corporations in regard to fees to be paid. It follows that while the license to do business is a vested right, it is not a right for which appellant paid in full at the time the license was issued. It can hardly be urged as consonant with the policy of this State of equal treatment of foreign and domestic corporations, that a foreign corporation with a large capital stock but with little or no business or property in this State might gain a license to do business here on a minimum fee and thereafter transfer the bulk of its property and business to the State without paying any further fee, while a domestic corporation of like character and like capital stock is required to pay the fee on its entire capi-

tal stock before it is allowed to do business. It was the evident intention of the legislature by requiring these reports and these additional fees, to conform to the policy of this State of equal treatment of foreign corporations and domestic corporations, and instead of being a discrimination against a foreign corporation it is but a just method of equalizing, as far as it may be equalized, the liabilities of the foreign corporation and those of the domestic.

In the case of *Tarr* v. *Western Loan and Savings Co.* 15 Idaho, 741, this same question was raised. It was there urged that as the foreign corporation in that case had complied with the statute in force at the time the license to do business was issued, it was not within the power of the legislature to add additional requirements with which it must comply in order to continue doing business. In that State the statute likewise provided that foreign corporations should have all the rights and privileges of like domestic corporations. It was held that since the act there in question required a foreign corporation to pay to the Secretary of State the same fees as are required to be paid by like domestic corporations, the exactions made of foreign corporations were not different from those made of domestic corporations, and that there was no discrimination and no impairment of contract obligations.

It is contended by appellant, however, that the amendment of 1917 makes a new basis for computing fees, for the reason that it based the fees on an average of the percentage of Illinois assets to total assets and of its Illinois business to total business, and that an average of two figures must necessarily be different from either. The general law gives no method for the computation of the proportion of capital stock represented in the State. What method was adopted by the Secretary of State is not material, as such would not be binding on the legislature. Whether or not the legislature by the amendment of 1917 changed the basis of computing the fees depends on whether the

method therein prescribed might legally have been used by the Secretary of State under the law as it existed in 1901, when the license was issued to the appellant. We are of the opinion that the law in effect at the time the license was issued herein would have permitted the use by the Secretary of State of the method, in arriving at the same matter, which is prescribed in the amendment of 1917. That which is to be sought as the basis of the fees in this case is the proportion of the capital stock represented in this State by the property and business of the corporation within the State. Previous to the amendment of 1917 the statute was silent as to the method of computing such proportion. The amendment provides that the Secretary of State shall, from interrogatories and answers thereto, ascertain "the proportion of capital stock actually being represented by property located and business transacted in the State of Illinois, which proportion shall be determined by averaging the percentage of the total business of the corporation transacted in Illinois with the percentage of the total tangible property located in this State." It is not pointed out wherein this method would work an injury to appellant over any method used in the past. In fact, a computation based upon this method appears, on demonstration, to be more favorable to appellant than that based on the method previously used by the Secretary of State. However, that is not the test. The test is whether the present method could have been used previous to the amendment of 1917. We are of the opinion that it could. In any event, the object was to ascertain the proportion of the capital stock represented in this State by business and property. It was upon that proportion that the fee was and is based.

It is urged that this is a discrimination against foreign corporations, for the reason that an increase of Illinois business and a decrease of the business outside of the State each result in an increase of the fees. While this is true it does not argue that such a basis is therefore illegal. Those

are circumstances which affect the amount of the fee required to be paid but do not, however, affect the rule, which is, that a fee shall be paid in proportion to the amount of stock represented in the State. Any method of computing the proportion of representation of stock in the State would be open to the same argument. Nor does this work a discrimination against a foreign corporation in favor of a domestic corporation of a like character, for the reason that in no event could the foreign corporation be required to pay more fees than the domestic corporation pays, even though such foreign corporation transfers all its business and all its property to this State, as it would then be paying no more fees than the domestic corporation, which must pay the same fees on its entire capital stock before it commences business.

It is also urged that the amendment of 1917 is invalid as contravening the Federal constitution, in that it denies appellant the equal protection of the laws and seeks to take its property without due process of law. As we have seen, this act does not result in discrimination against foreign corporations, and therefore it follows that appellant is not being denied the equal protection of the laws. An examination of the authorities cited by counsel discloses that in each case the effect of the statutes there in question was to put upon foreign corporations a greater burden than upon domestic corporations of like character.

It is also urged by appellant that the tax here in question is an unlawful interference with inter-State commerce, on the ground that the tax assessed is measured by the percentage of its authorized capital stock, and that the tax imposed is a tax upon not only its capital, property and business represented in Illinois, but likewise its capital, property and business in other States. It will be seen that the amount of this fee or tax required to be paid by appellant is measured, as provided by the act, by a percentage of that proportion of its entire capital stock which is repre-

sented in the State by its property and business within the State. Such fee is not computed upon the entire capital stock but upon a fraction of that stock, and that fraction such as is represented within this State. It is evident that the only circumstances under which the legislature intended that a foreign corporation should be taxed upon all of its capital stock would be where it had transferred all its business and property to this State. If, from the mere fact that this license fee or tax must be paid out of the earnings of the company, it should be held that it was therefore a tax upon the whole capital stock of the corporation, then it would be impossible to levy any fee on a foreign corporation for privilege to do business in this State, as any such fee or tax, because paid out of the earnings of the corporation, would be a burden upon inter-State commerce. Such is not the law. The right of States to levy such fee has been universally recognized.

In support of their contention that this amendment places a burden upon inter-State commerce counsel for appellant cite numerous cases, which will be found, upon examination, to differ from the facts in this case, and none of which hold, as we understand them, that a license fee required of a foreign corporation to do business in a State is a burden upon inter-State commerce. The most recent case cited by the appellant is that of *Union Pacific Railway Co.* v. *Public Utilities Com. of Missouri,* 248 U. S. 67. The State of Missouri passed a law fixing a tax by a percentage upon the total issue of bonds contemplated by said railroad company. The railroad company was a foreign corporation having over 3500 miles of railway, of which about six-tenths of one mile of main track was in the State of Missouri. It had a total property in the State of Missouri of a little over $3,000,000 out of a total average of $281,000,000. The business done by the road in Missouri was wholly inter-State. The court there says: "On these facts it is plain on principle now established, that the charge

which, in accordance with the letter of the Missouri stat-
utes, was fixed by a percentage on the total issue contem-
plated, was an unlawful interference with commerce among
the States." In the case at bar there is no attempt to fix
taxes on the entire capital stock of appellant. All that is
sought is that appellant shall pay, as a license fee to do
business, the same fee on the proportion of its stock rep-
resented in this State that would be paid by a domestic cor-
poration of like character on the same amount of stock.
Such has been held valid by the Supreme Court of the
United States. In *United States Express Co.* v. *Minnesota,*
223 U. S. 335, it was held that while a State does not have
the right to burden inter-State commerce by taxing it, yet
such inter-State commerce may be used as a measure of
the value of the property of a corporation engaged in inter-
State commerce. The court in that case says: "In *Maine*
v. *Grand Trunk Railway Co.* 142 U. S. 217, this court sus-
tained a tax which required every railroad operated within
the State to pay an annual tax for the privilege of exercis-
ing its franchise therein, determined upon a proportion of
gross transportation receipts, which in that case were shown
to be those of a railroad partly within and partly without
the State, such gross receipts being derived from its entire
business, State and inter-State. The resort to the gross
receipts, in the opinion of the court, was merely a means
of ascertaining the business done by the corporation and
thus measuring the tax, which was held to be within the
power of the State. In *Wisconsin and Michigan Railway
Co.* v. *Powers,* 191 U. S. 379, a tax was sustained which
made the income of the railway company within the State,
including inter-State earnings, the *prima facie* measure of
the value of the property within the State for the purpose
of taxation. In the course of the opinion this court said
(p. 387): 'In form the tax is a tax on the property and
business of such railroad corporation operated within the
State, computed upon certain percentages of gross income.

The *prima facie* measure of the plaintiff's gross income is substantially that which was approved in *Maine* v. *Grand Trunk Railway Co.* 142 U. S. 217.' "

The rule adopted by the United States Supreme Court is, that while the State may not regulate inter-State commerce or impose burdens upon it, it is authorized to levy a tax within its authority, measured by the capital stock in part used in the conduct of such commerce, where the circumstances are such as to indicate no purpose or necessary effect in the tax imposed to burden commerce of that character. *Kansas City Railroad Co.* v. *Stiles,* 242 U. S. 111; *Northwestern Mutual Co.* v. *Wisconsin,* 247 id. 132; *United States Glue Co.* v. *Oak Creek,* 247 id. 341; *Baldwin Tool Works* v. *Blue,* 240 Fed. Rep. 202.

Appellant also urges that the act is invalid in that the fee there required is based upon the entire capital stock of the company, including the unissued as well as the issued capital stock. The statute refers to the proportion of the capital stock of the corporation. Section 3 of the Corporation act, as amended in 1899, required a statement of "the proportion of the capital stock" represented in this State, and required the payment of the license tax thereon. This same provision appears in the amendment of 1917. As we have seen, this license tax is not a burden upon inter-State commerce and is not a tax on the entire capital stock of the corporation but only upon that portion represented within this State. The whole of the capital stock is used merely as a method of determining what proportion of the same is so represented. Again, domestic corporations are required to pay a tax or fee upon the authorized capital stock, regardless of the amount issued. Under the policy of equal treatment, therefore, it is evident that the legislature intended that the capital stock to be considered in arriving at the proportion upon which the license tax is to be based is the capital stock authorized by the charter. The term "capital stock" has been defined as a term

used to indicate the amount of capital stock which the charter provides for. (*State* v. *Fire Ass'n,* 23 N. J. L. 195.) While, for purposes of levying an *ad valorem* tax, the term has in some States been defined to mean the amount of capital paid in, we are of the opinion that for the purposes for which used here the term "capital stock" refers to the capital stock authorized.

We are therefore of the opinion that the amendment of 1917 is not open to the objections urged against it.

The decree of the circuit court sustaining the demurrer and dismissing appellant's bill for want of equity will therefore be affirmed.

*Decree affirmed.*