(No. 21503.—)

THE ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellant, *vs.* WILLIAM J. STRATTON, Secretary of State, Appellee.

*Opinion filed October 21, 1933.*

STONE, J., dissenting.

WHITNEL & BROWNING, and CARTER, JONES & TURNEY, for appellant.

OTTO KERNER, Attorney General, (B. L. CATRON, of counsel,) for appellee.

Mr. CHIEF JUSTICE ORR delivered the opinion of the court:

The St. Louis Southwestern Railway Company, the appellant, paid to the Secretary of State, under protest, the minimum fee of $1000 assessed as its annual franchise tax for the year beginning July 1, 1929, and then filed its bill of complaint in the circuit court of Sangamon county to recover all of the amount paid except $130.25 admitted to be due and to enjoin the payment of the alleged excess amount of $869.75 into the State treasury. To this bill the appellee filed a demurrer, which was extended to an amended bill. After a hearing the circuit court sustained the demurrer and entered a decree dismissing the amended bill for want of equity. From that decree the present appeal was taken. A temporary injunction formerly issued was allowed to remain in force pending the final determination of this case.

The principal contention of the appellant challenges the validity of the minimum franchise tax provisions of sections 105 and 107 of the general Corporation act, and as the latter part of the first sentence of section 105 refers to section 107 of the same act, both sections must be considered and construed together.

From the amended bill in this case it appears that the appellant, a Missouri corporation, was admitted to do business in this State on October 19, 1903, for a term of eighty-eight years, for which it paid an admission fee of $95;

that the certificate of admission then issued to the appellant recited its authorized capital stock to be $55,000,000, of which $50,000 was first represented in this State; that afterwards the appellant increased its authorized capital stock from $55,000,000 to $130,000,000, and on this increase paid a further initial or admission fee of $315.45 on that portion represented in Illinois; that on January 1, 1929, $36,249,750 of the appellant's authorized stock had been issued and was outstanding; that subsequent to its admission to do business in Illinois the appellant brought additional property and transacted business in this State in increasing amounts, on which it paid further initial or admission fees to the Secretary of State from time to time; that the annual report filed by the appellant with the Secretary of State on February 15, 1929, showed that the total value of its property in all States in the year 1928 was $77,394,687.25 and that its total business in all States during that year was $17,999,096.83; that the total value of its property in Illinois was then $684,373 and its total business transacted in this State during 1928 was only $1170.06; that it is a common carrier engaged in both intrastate and interstate transportation of freight and passengers; that it has not at any time had any property or business in the State of Illinois which, as compared to the whole of its property and business, represented more than $1,533,324.43 of its issued capital stock. It is contended that since the great bulk of the appellant's business, so far as Illinois is concerned, is interstate commerce, the $1000 franchise tax assessed against it by the Secretary of State is a direct tax burden upon its interstate traffic, contrary to section 8 of article 1 of the Federal constitution.

By the provisions of section 102 of the general Corporation act both domestic and foreign corporations are required to make annual reports to the Secretary of State in February of each year, showing the amount of property located and business transacted in this State during the pre-

ceding calendar year. From this report the annual license fee or franchise tax is computed and assessed by the Secretary of State in advance for the next year, beginning July 1. Sections 105 and 107, providing for the computation of the fee or tax to be assessed, are as follows:

"Sec. 105. Each corporation for profit, including railroads, except insurance companies, heretofore or hereafter organized under the laws of this State or admitted to do business in this State, and required by this act to make an annual report, shall pay an annual license fee or franchise tax to the Secretary of State of five cents on each one hundred dollars of the proportion of its issued capital stock, or amount to be issued at once, represented by business transacted and property located in this State, but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no property or business in this State. * * *

"Sec. 107. In case it appears from the annual report that the corporation has no property located in this State, and is transacting no business in this State, the following fees shall be paid annually to the Secretary of State as an annual franchise tax: All such corporations having issued capital stock of $50,000 or less shall pay an annual fee of $10; corporations having issued capital stock of more than $50,000 but not exceeding $200,000 shall pay an annual fee of $15; corporations having issued capital stock of more than $200,000 but not exceeding $500,000 shall pay an annual fee of $20; corporations having issued capital stock of more than $500,000 but not exceeding $1,000,000 shall pay a fee of $50; corporations having issued a capital stock of more than $1,000,000 but not exceeding $10,000,000 shall pay a fee of $200; corporations having issued capital stock of more than $10,000,000 but not exceeding $20,000,000 shall pay a fee of $500; and all corporations having issued capital stock in excess of $20,000,000 shall pay an annual fee of $1000."

The appellant urges that the proper computation under section 105 is to take that portion of its issued capital stock represented by property owned and business done by it in Illinois, (.007186 per cent of the total issued capital stock, $36,249,750, at five per cent,) or the sum of $130.25. The appellee argues that the appellant, a foreign corporation, has issued stock in excess of the $20,000,000, and therefore the minimum franchise tax to be paid in Illinois should be computed under section 107, resulting in a tax of $1000.

The State sets forth that the last clause of section 105 requires a corporation to pay at least the minimum fee prescribed by section 107 if the corporation has not used a substantial part of its capital stock in Illinois during the preceding year, such tax to be paid for the privilege of maintaining its rights in this State and exercising them as it desired. This contention cannot be sustained without doing violence to the clearly expressed intent of the legislature in another portion of the same act. Those who maintain this position must admit that the franchise tax of $1000 assessed against the appellant under sections 105 and 107 is not based upon and has no relation to the amount of property held or the amount of business transacted by it in this State. That the annual franchise tax provided under sections 105 and 107 is not levied as pay for the privilege or authority of doing business in Illinois is shown by section 101 of the general Corporation act, where the legislative purpose in that direction is made clear by this language: "Each foreign corporation for pecuniary profit, * * * in addition to the annual franchise fees and taxes hereinafter provided, shall pay to the Secretary of State for its certificate of authority to do business in Illinois, the same fees provided by this act to be paid by a similar corporation incorporated under the laws of this State." The distinction seems clear between an initial or admission fee, by which the State, largely as a protective measure, may exact, in its discretion, either large or small fees from foreign corporations for the

privilege of doing business in the State, and a franchise or excise tax, levied principally for revenue purposes upon the exercise of the franchise or contract rights previously granted. This distinction is made clear in *Hanover Fire Ins. Co.* v. *Harding,* 272 U. S. 494, in this language: "In subjecting a law of the State which imposes a charge upon foreign corporations to the test whether such a charge violates the equal-protection clause of the fourteenth amendment, a line has to be drawn between the burden imposed by the State for the license or privilege to do business in the State and the tax burden, which, having secured the right to do business, the foreign corporation must share with all the corporations and other tax-payers of the State. With respect to the admission fee, so to speak, which the foreign corporation must pay to become a quasi-citizen of the State and entitled to equal privileges with citizens of the State, the measure of the burden is in the discretion of the State, and any inequality as between the foreign corporation and the domestic corporation in that regard does not come within the inhibition of the fourteenth amendment, but after its admission the foreign corporation stands equal and is to be classified with domestic corporations of the same kind."

The appellee cites *General Railway Signal Co.* v. *State of Virginia,* 246 U. S. 500, as an approval by the Supreme Court of the United States of the principle of a franchise tax with a reasonable maximum limit. That case, however, really involved the legality of an admission fee to do business within Virginia and not a franchise tax. The cases of *New York* v. *Latrobe,* 279 U. S. 421, and *Hanover Fire Ins. Co.* v. *Harding, supra,* both place the *General Railway Signal Co. case* in that class of cases where it has been held that a State has the unquestioned right to impose whatever fee it may see fit on a corporation about to enter the State to do business, as distinguished from a tax on the right of a corporation to continue to do business in a State after

it has once been admitted. What a State may charge a foreign corporation for the original right of admission to the State does not matter, so long as it does not seek a waiver of any right given by the Federal constitution. *St. Louis Southwestern Railway Co.* v. *Emmerson,* 30 Fed. (2d series) 362.

Another case cited by the appellee was *Kansas City, Ft. Scott and Memphis Railroad Co.* v. *Kansas,* 240 U. S. 227, wherein a statute imposed a franchise tax of a graduated nature, with a maximum of $2500, on capital stock amounting to over $5,000,000. It was there held that the tax did not impose a burden upon interstate commerce although a large part of the property and business of the corporation was outside the State of Kansas. However, that case is to be distinguished from the present one because there the railway company was a domestic corporation, and a State may place an excise or franchise tax upon a domestic corporation which is measured by a standard made up of the whole amount of the corporation's stock. This rule does not apply when a foreign corporation is concerned. *Airway Electric Appliance Corp.* v. *Day,* 266 U. S. 71; *O'Gara Coal Co.* v. *Emmerson,* 326 Ill. 18.

In *Baltic Mining Co.* v. *Massachusetts,* 231 U. S. 68, also cited by the appellee, a tax of one-fiftieth of one per cent of the authorized capital stock of foreign corporations was imposed for the privilege of doing business in Massachusetts. A maximum limit of $2000 on a capital stock of $10,000,000 or more was imposed. That case held such a tax reasonable and not necessarily burdensome to interstate commerce in view of the limitations and conditions imposed by the act. When the maximum limitations were subsequently removed from that act it was held in the case of *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, to be invalid on the ground of being an unreasonable burden on interstate commerce and a tax upon property without the bounds of the State. The Supreme

Court of the United States in *Alpha Portland Cement Co. v. Massachusetts*, 268 U. S. 203, in commenting upon the *Baltic Mining Co. case*, said: "It must now be regarded as settled that a State may not burden interstate commerce or tax property beyond her borders under the guise of regulating or taxing intrastate business. So to burden interstate commerce is prohibited by the commerce clause, and the fourteenth amendment does not permit taxation of property beyond the State's jurisdiction. The amount demanded is unimportant when there is no legitimate basis for the tax. So far as the language of *Baltic Mining Co. v. Massachusetts* * * * tends to support a different view it conflicts with conclusions reached in later opinions and is now definitely disapproved."

In cases involving the validity of the laws of a State imposing license fees or excise taxes on corporations organized in another State the United States Supreme Court has decided: "(1) The power of a State to regulate the transaction of a local business within its border by a foreign corporation (meaning a corporation of a sister State) is not unrestricted or absolute but must be exerted in subordination to the limitations which the constitution places on State action. (2) Under the commerce clause exclusive power to regulate interstate commerce rests in Congress, and a State statute which either directly or by its necessary operation burdens such commerce is invalid, regardless of the purpose with which it was enacted. (3) Consistently with the due process clause, a State cannot tax property belonging to a foreign corporation and neither located nor used within the confines of the State. (4) That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation, as a condition of the right to do a local business therein, to submit

to a tax on its interstate business or on its property out-
side the State. (5) A license fee or excise of a given
per cent of the entire authorized capital of a foreign cor-
poration doing both a local and interstate business in sev-
eral States, although declared by the State imposing it to
be merely a charge for the privilege of conducting a local
business therein, is essentially and for every practical pur-
pose a tax on the entire business of the corporation, includ-
ing that which is interstate, and on its entire property, in-
cluding that in other States; and this because the capital
stock of the corporation represents all its business of every
class and all its property wherever located. (6) When
tested, as it must be, by its substance—its essential and
practical operation—rather than its form or local characteri-
zation, such a license fee or excise fee is unconstitutional
and void as illegally burdening interstate commerce, and
also as wanting in due process because laying a tax on
property beyond the jurisdiction of the State." *Inter-
national Paper Co.* v. *Massachusetts, supra; Airway Elec-
tric Appliance Corp.* v. *Day, supra.*

In behalf of the appellant the recent decision of the
Supreme Court of the United States in *Cudahy Packing Co.*
v. *Hinkle,* 278 U. S. 460, is urged to have definitely settled
the issues in this case in its favor. There the Cudahy Com-
pany, incorporated under the laws of Maine, had an au-
thorized capital stock of $45,000,000. Less than $30,000,000
of that stock had been issued, while the total value of the
corporate property did not exceed that sum. The company
was engaged in a very extensive interstate business in meats
and foodstuffs. The capital stock in 1916 was $20,000,000,
and at that time the company began to carry on a closely
related interstate and intrastate business in the State of
Washington after it had been admitted to do business in
that State. At the time the action arose the value of the
company's property in Washington was $40,000. Gross
sales of the company for the year ending October 30, 1926,

were over $231,000,000, but only a little over $1,300,000 of these sales were in Washington, and less than one-half of that sum was intrastate business. The statute which was questioned obligated foreign corporations after once being admitted to do business in the State, and domestic corporations also, to pay annual license fees of not exceeding $3000 on their authorized capital stock. The case involved two distinct matters: a question about filing or admission fees due to increased capital, and the question of the license or franchise tax for 1927. The majority of the court followed a previous opinion rendered in the case of *Looney v. Crane,* 245 U. S. 178, wherein it examined Texas statutes which required foreign corporations to pay permit and franchise taxes graduated according to authorized capital stock and declared them in conflict with the Federal constitution because they imposed a direct burden upon interstate commerce, and additionally exerted the taxing authority of the State over property and rights not situated within its bounds and hence not subject to its jurisdiction. The court declined to follow the *Baltic Mining Co. case, supra,* saying that the amount demanded was unimportant when there is no legitimate basis for the tax. It is true that in *Cudahy Packing Co.* v. *Hinkle, supra,* and *Airway Electric Appliance Corp.* v. *Day, supra,* the measure of the tax was authorized rather than issued stock, but they are cited herein as recent and leading authorities where, as in this case, the tax attempted to be collected fell in unreasonable proportion upon corporate assets located and business transacted outside the taxing State.

In the present case the State has endeavored to collect a franchise tax from appellant which in a large part would be paid out of corporate assets and business done outside the boundaries of Illinois. Under the provisions of section 105 the franchise tax due from the appellant to the Secretary of State, computed upon its property and business in this State, was $130.25. Its business in Illinois

during 1928 only totaled $1170.06. Only $1,533,324.33 of its $36,249,750 issued stock has been admitted to do business in Illinois. Its $684,373 worth of property in this State was all subject to general taxation. Under the provisions of sections 105 and 107 the appellant, even if it had done no business in Illinois or had no property in this State, would nevertheless have been required to pay $1000 a year as a franchise tax because it had issued more than $20,000,000 of its capital stock in another State. It is undisputed that the major portion of the appellant's property in this State was used in the conduct of its interstate business.

The Secretary of State has followed the mandatory provisions contained in section 105 in assessing the minimum franchise tax against the appellant at $1000 under the provisions of section 107. Thus we are faced with the inescapable necessity of deciding whether or not sections 105 and 107 are constitutional. Even a casual reading of section 107 shows it to be squarely in conflict with the previously cited holdings of this and the Federal courts, as it constitutes an attempt on the part of the legislature, inconsistent with the due process clause, to exact minimum franchise taxes from corporations having no property located in this State and transacting no business in this State. That a foreign corporation is partly, or even chiefly, engaged in interstate commerce does not prevent a State in which it has property and is doing a local business from taxing that property and imposing a license fee or excise in respect of that business, but the State cannot require the corporation, as a condition of the right to do a local business therein, to submit to a tax on its interstate business or on its property outside the State. *Airway Electric Appliance Corp.* v. *Day, supra.*

This court has previously called attention to the great weight of authority holding that a State cannot, through the guise of a franchise or permit tax, exert its taxing

authority over property located and business done outside its bounds and hence not subject to its jurisdiction. The imposition of such a tax under sections 105 and 107 in the present case constituted a direct burden on interstate commerce. It must be borne in mind that the franchise or excise tax involved here is not a tax upon a property right, tangible or intangible, but is a tax laid upon the exercise of an extraordinary privilege. If the privilege is not exercised there can be no tax. The power to tax depends upon what was done—not upon what might have been done. (*Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 560, 69 L. ed. 439.) In other words, if a foreign corporation is engaged only in interstate commerce it is well settled that no excise tax can be constitutionally imposed upon it by the State. The protection against imposition of burdens upon interstate commerce is practical and substantial and extends to whatever is necessary to the complete enjoyment of the right protected. (*Heyman* v. *Hays,* 236 U. S. 178, 59 L. ed. 527.) The tax imposed cannot be treated as if it were a consideration paid in exchange for a privilege, whether exercised or not, but rather as an excise, which must be reasonable in amount when considered in relation to the extent of the privilege when exercised. Thus it was said by the United States Supreme Court in *Airway Electric Appliance Corp.* v. *Day, supra:* "Without holding that such a charge must be measured by the value of the privilege for which it is imposed, it may be said that some relation to such value is a reasonable requirement." In this case a franchise tax of $1000 was imposed upon the exercise of a privilege to the extent of $1170.06 worth of intrastate business. Such an imposition obviously bore no reasonable relation to the value of the privilege exercised. Here the appellant was required to pay out almost as much money by way of franchise taxes as it had received in revenue from intrastate business during the preceding year. All of the franchise tax imposed

in excess of $130.25 would, if paid, have been deducted from its earnings out of business done in other States. This result would flow from any case where section 107 is applied, as it specifically requires a minimum franchise tax from all corporations, without exception, which have no property in this State and are transacting no business in this State. Section 107 is therefore void in its entirety, as it affords no legitimate basis for a franchise tax and results in the imposition of taxes upon property located and revenues obtained outside of the boundaries of Illinois, in irreconcilable conflict with the commerce clause and the fourteenth amendment of the Federal constitution. Likewise, that portion of section 105 which reads, "but in no event shall the amount of such license fee or franchise tax be less than that required by this act of corporations having no property or business in this State," is invalid because it expressly provides for the imposition of a tax without regard to whether or not it may be reasonably attributed to intrastate business, and further because it refers to section 107, in itself void, for its application. Under section 157 of the Corporation act the invalidity of the quoted clause of section 105 does not affect the validity of the remainder of that section.

While other errors have been assigned by the appellant a consideration of them is unnecessary, inasmuch as this appeal must be sustained upon the error assigned and fully dealt with in this opinion.

The decree is reversed and the cause remanded to the circuit court of Sangamon county, with directions to enter a decree in consonance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, dissenting:

I do not concur in the view of the majority that section 107 and the applicable portion of section 105 of the Corporation act are invalid as constituting an unreasonable burden on interstate commerce.

Appellee's position is that a State has the right to impose a reasonable minimum annual franchise fee or tax in advance for the use of the privilege granted by it to a corporation to carry on a local business in the State, even though such corporation may not have actually exercised that privilege to a substantial extent during the preceding year, and that as such the tax does not discriminate against any foreign or domestic corporation but is applied uniformly to all corporations under the same circumstances; that it is a tax upon a privilege granted, and does not directly or necessarily affect property outside the State nor impose an illegal burden upon interstate commerce. Since appellant concedes the power of the State to levy a franchise tax under the general provisions of section 105 when limited to such issued capital stock as is represented by business transacted and property owned within the State, it is not necessary to consider that phase of the act. That feature of the section has been frequently sustained by this court and the Supreme Court of the United States against the charge that it lacks due process of law, burdens interstate commerce or is discriminatory. (*American Can Co.* v. *Emmerson,* 288 Ill. 289; *Hump Hairpin Manf. Co.* v. *Emmerson,* 293 id. 387, 258 U. S. 290, 66 L. ed. 622; *Roberts & Schaefer Co.* v. *Emmerson,* 313 Ill. 137, 271 U. S. 50, 70 L. ed. 827; *Western Cartridge Co.* v. *Emmerson,* 335 Ill. 150, 281 U. S. 511, 74 L. ed. 1004.) The validity of a minimum franchise tax to be applied when the business transacted and property owned in the State does not produce a tax equivalent to such minimum has not heretofore been passed upon by this court.

In support of appellant's argument that section 105 unlawfully burdens interstate commerce and violates the due process clause of the Federal constitution, numerous decisions of this court and of the Supreme Court of the United States involving statutes imposing a franchise tax based on the entire authorized capital stock of foreign or

domestic corporations, rather than on the stock actually issued and outstanding, are cited. These cases uniformly hold that a franchise fee so measured contravenes the due process clause of the Federal constitution and constitutes a burden on interstate commerce for the reason that unissued stock bears no reasonable relation to the business transacted by or the property of the corporation. *O'Gara Coal Co.* v. *Emmerson,* 326 Ill. 18; *Airway Electric Appliance Corp.* v. *Day,* 266 U. S. 71, 69 L. ed. 169; *International Paper Co.* v. *Massachusetts,* 246 id. 135, 62 L. ed. 624; *Looney* v. *Crane Co.* 245 id. 178, 62 L. ed. 230; *Cudahy Packing Co.* v. *Hinkle,* 278 id. 460, 73 L. ed. 454.

Pursuant to the holding of this court in the case of *O'Gara Coal Co.* v. *Emmerson, supra,* the legislature of this State in 1927 amended sections 105, 106 and 107 to base the franchise tax on issued rather than authorized capital stock. The majority opinion holds that the theory and basis of a franchise tax statute requires, and must require, that the annual franchise tax be limited to the rate specified on that part of the corporation's capital stock represented by property owned and business done in the taxing State; that there is no legal sanction for a franchise tax that is not so measured and limited, and that to require a minimum amount which, in any event, results in a larger tax is invalid. *Cudahy Packing Co.* v. *Hinkle, supra,* is cited as determining the question here. There a statute of Washington required that all domestic and foreign corporations filing articles of incorporation with the Secretary of State pay to that officer a filing fee in proportion to their authorized capital stock according to a schedule in the act provided, graduated from a fee of $25 on authorized capital stock not exceeding $50,000 to $750 on authorized capital stock of over $2,000,000, with $10 additional for each million of such capital stock, or major fraction thereof, in excess of $2,000,000. The maximum of such fee was fixed at $3000. The act also required an annual

franchise fee on all corporations, domestic and foreign, graduated from $15 on authorized capital stock of $50,000 or less to $150 on authorized capital stock of $2,000,000, with a like charge of $10 for each million, or major fraction thereof, over $2,000,000, the annual franchise fee in no case to exceed $3000. The complainant in that case had an authorized capital of $45,000,000, of which it had issued less than $30,000,000. The total value of its property did not exceed the latter sum. It had in Washington property of the value of $40,000. Its gross sales amounted to over $230,000,000, of which something over $1,300,000 were made in Washington, less than one-half of those being intrastate. The court referred to *Looney* v. *Crane Co. supra,* in which a franchise tax graduated according to authorized capital stock without prescribing a maximum limit was held invalid, and pointed out that unless saved by the maximum limitation in it the Washington statute was subject to the objections pointed out in the *Crane Co. case.* It was held that if there be no legitimate basis for the tax the amount demanded is unimportant, and that the act was invalid under the *Crane Co. case* and other cases there cited. It will be observed that the validity of a reasonable minimum franchise tax based on issued capital stock was not before the court. As the act involved in the *Cudahy Packing Co. case* and the facts of that case are not in effect or in reality the same as the instant case, that decision is not controlling in determining whether the minimum franchise tax in this case is valid. Under the statute of this State only issued stock is considered, and that to the limited extent required by the act.

In *Airway Electric Appliance Corp.* v. *Day, supra,* cited in the *Cudahy Packing Co. case,* a Delaware corporation had authorized stock of 400,000 shares no par value, of which but 50,485 shares had been issued at the time of the levy of the franchise tax in suit. Its property was all located in Ohio, the taxing State. Twenty-eight per cent of

its business for the year was local and the rest interstate. The franchise tax was based on the portion of its authorized capital stock represented by property owned and business done in Ohio. The taxing officer treated all the business of the corporation as intrastate and assessed a tax of five cents per share on all the authorized capital stock. The court, after laying down the general principles governing the power of a State to assess a franchise tax, held that as some of the corporation's outstanding shares were represented by interstate business, the application of the there specified rate of tax to all the shares, or to any greater number than the total outstanding shares, constituted a direct burden on interstate commerce. It was also held that the fee charged must bear some reasonable relation to the privilege granted, which in that case the fee did not have.

In *General Railway Signal Co.* v. *Virginia*, 246 U. S. 500, 62 L. ed. 854, the statute required every foreign corporation with a capital of over $1,000,000 and not exceeding $10,000,000 to pay a license fee of $1000 when it obtained its certificate to do local business. It was attacked on the ground that it unlawfully burdened interstate commerce. The court held that such fee was not wholly arbitrary or unreasonable and that it was not open to the objection urged and sustained its validity, citing *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, *K. C., Ft. S. & M. R. R. Co.* v. *Bodkin*, 242 id. 226, and *K. C., M. & B. R. R. Co.* v. *Stiles*, 242 id. 111. It was observed that what was said in those cases was sufficient to show that the characteristics of the Virginia statute were such as to save its validity.

It is said in the majority opinion that the *Virginia case* is not applicable because in that case the tax was an admission fee to be paid but once, while here the fee is an annual tax. The court, however, does not draw such a distinction, and cases cited and relied upon by it involved annual franchise taxes. *Hanover Fire Ins. Co.* v. *Harding*,

272 U. S. 494 is cited. The question in that case was whether the charge imposed violated the equal protection clause of the fourteenth amendment of the Federal constitution. It was there held that inequality as between foreign and domestic corporations with respect to the admission fee does not come within the inhibition of the fourteenth amendment, though after admission foreign and domestic corporations must receive like treatment. It was also in the *Hanover Fire Ins. Co. case* said, that under the decisions of recent years "the State may not exact as a condition of the corporation's engaging in business within its limits, that its rights secured to it by the constitution of the United States may be infringed," citing *Sioux Remedy Co.* v. *Cope*, 235 U. S. 197, and *Looney* v. *Crane Co. supra.* The question in the case before us is whether our statute unlawfully burdens interstate commerce. Since the minimum franchise tax under section 105 applies alike to domestic and foreign corporations, of course no discrimination exists.

In *International Shoe Co.* v. *Shartel*, 279 U. S. 429, 73 L. ed. 781, a statute of Missouri providing for the assessment of an annual franchise tax was attacked. It was held that a franchise tax imposed on a corporation, foreign or domestic, for the privilege of doing local business, as apportioned to the business done or the property owned within the State, is not invalid under the commerce clause merely because part of the property or capital included in computing the täx is used by it in interstate commerce— citing numerous cases. The opinion distinguishes the tax in that case from others, such as the *Airway case*, the *Looney* v. *Crane Co. case* and the *Cudahy Packing Co. case*, which either were measured by authorized instead of issued capital stock, or were not limited to part of the capital stock justly apportioned to the taxing State. It was there said that the fact that a corporation is engaged in interstate commerce does not relieve it of local tax burdens in respect to its property in the State or its intrastate busi-

ness. In that case it was also objected that the taxing authorities placed an excessive valuation on the non par stock, but it is pointed out that the value of the stock did not appear, and therefore no ground was laid for assailing the tax as so excessive as to be a denial of due process.

In *Western Cartridge Co.* v. *Emmerson,* 281 U. S. 511, 74 L. ed. 1004, the sections of the Corporation act involved here were attacked. It was held that a State has a right to impose a license tax for the exercise of the right of a corporation to do business in the State and that the tax was not laid directly upon interstate commerce, although in determining the amount of the tax the corporation's business and property located in the State are divided by all its business and property, since various elements employed in the calculation of the tax did not directly depend upon the amount of the tax-payer's interstate transactions. Reference is made to the *Airway case, supra,* and the distinction between the cases is pointed out, in that the tax there was applied to authorized capital stock, and so to a number of shares greatly in excess of the total issued. The court observes that the main case cannot be distinguished from *Hump Hairpin Manf. Co.* v. *Emmerson, supra.*

In *Hump Hairpin Manf. Co.* v. *Emmerson, supra,* section 105 of the Corporation act of this State was attacked. The corporation was organized under the laws of West Virginia and had all of its tangible property in Illinois. Approximately ninety per cent of its business was done outside the State, and it was argued that the tax imposed was a burden on interstate commerce. The court states that the question presented was whether the use made of the amount of interstate business in determining the amount of the tax rendered the act invalid. Attention was called to the ruling that a State excise tax, which affects interstate commerce not directly but only incidentally and remotely, may be entirely valid where it is clear that it was not imposed with a covert purpose or with the effect of defeating con-

stitutional rights. The test is declared to be "whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of or restraint upon it or whether it affects it only incidentally or remotely, so that the tax is not in reality a burden, although in form it may touch and in fact distantly affect it." It was there pointed out that the interstate business of the corporation is but one of the factors used in estimating or measuring the amount of the capital stock represented by property and business transacted in Illinois. A franchise tax need not be based solely on the amount of business done or property owned in the State, so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the State. *New York* v. *Latrobe*, 279 U. S. 421, 73 L. ed. 776.

*Ozark Pipe Line Corp.* v. *Monier*, 266 U. S. 561, 69 L. ed. 439, is also cited in the majority opinion. A Missouri statute required foreign corporations to pay an annual franchise tax of one-tenth of one per cent of the par value of capital stock and surplus employed in business in the State, to be determined by computing that proportion of its entire capital and surplus which its property and assets in Missouri bore to all its property and assets wherever located. In that case the complaining corporation owned a pipe line extending through the State but did no business and received and delivered no oil in the State. It had its principal office, with pumping stations, telegraph and telephone lines, in the State. It was there held that as the corporation did no intrastate business the tax necessarily was entirely based on interstate business. That case is readily distinguishable from the case before us.

It will be observed that in none of these cases has a minimum tax of the exact character of that here involved, under the same or analogous facts and statutory provisions, been before the courts, and I have found no such case. The cases cited, however, lay down the principles

governing such a minimum tax. Applying these principles and considering permissible bases of such tax, I am of the opinion that the tax here involved does not violate the commerce or due process clause of the constitution of the United States. We come, then, to the question whether it denies appellant equal protection of the laws.

Nor does the application of a minimum tax in this act discriminate against appellant. It is argued in the brief of appellant that this tax requires appellant to pay more per dollar on its shares of stock than may be required of other corporations. The act requires the same minimum license fees of all foreign and domestic corporations based on their issued capital stock, and, of course, no discrimination as between domestic and foreign corporations exists, but it is said that a discrimination exists between it and other foreign corporations differing in issued capital stock and in amount of business done and property held in this State. *Cudahy Packing Co.* v. *Hinkle, supra,* is cited as authority for this position. As we have seen, under the Washington statute the franchise tax was computed solely on a graduated amount of authorized capital stock, with a maximum fee of $3000. No minimum fee similar to that imposed in this State is provided. There was thus presented no distinction between corporations using little or no capital in the State and those so using a larger part or all of their capital, and it was held that in failing to consider this difference between the value of the right to use the privilege granted as between foreign corporations so differing, the act violated the equal protection clause of the Federal constitution. The distinction between that act and the Illinois act in this regard is obvious. In no instance, under the act before us, is any corporation with an issued capital stock of over $20,000,000 required to pay less than appellant is required to pay. Up to and beyond the point where their business done and property owned in this State produces a franchise fee equal to the minimum

fixed by section 105 for corporations of the class of appellant, the amount assessed against all is the same. Corporations with less issued capital stock which do not have business and property in the State sufficient to produce a minimum fee in the amount assessed against corporations with such stock and doing no business and having no property in the State will pay a less annual franchise tax than appellant, and it may be that corporations with less capital stock, having a greater proportion of their property and doing a larger per cent of their business in Illinois, will, because of such proportion of their business and property in the State, pay a larger fee than appellant, based on the rate fixed in section 105. That, however, is not a matter of which appellant can complain. The reverse of this situation is not true as applied to appellant, since all corporations with over $20,000,000 of issued stock fall in the same class with appellant, and so no situation can arise where appellant is required to pay a larger franchise tax than a corporation with a larger issued capital stock, and with either the same, a greater or a less proportion of its property and business in the State.

In *New York* v. *Latrobe, supra,* a New York statute imposed on foreign corporations a tax computed on the basis of issued capital stock employed by it within the State during the first year it did business there, in the proportion which its gross assets within the State bore to its gross assets wherever situated. The tax was styled a license fee, and was similar to an admission fee under our statute in that it was paid but once, though not due until the end of the year. The corporation was organized in Delaware with 250,000 shares of no par value stock. The question was whether the tax on no par value stock at the rate fixed, without regard to the true value of the amount paid into the corporation upon its issue, infringed the equal protection clause of the fourteenth amendment. It was argued that the tax was not, in fact, an admission fee but a fran-

chise fee imposed as the corporation was admitted, and so, under the *Airway Electric Appliance Corp. case,* resulted in lack of equal protection. The court held that it was unnecessary to consider whether the tax was imposed as a condition of entrance or a franchise tax. It was said that it did not consider the decision of the *Airway Corp. case* controlling, nor the tax so unreasonable or discriminatory as to deprive it of its validity. It was held that the maximum of such tax at a flat rate on corporation stock, either par or non par, used within the State, reasonably related to the privilege granted by the State and to the protection of its own interest in the maintenance of its similar policy of taxation with respect to domestic corporations, and was valid. It was also held that such a tax is not a denial of equal protection because a different measure or method of computation is applied to corporations of no par value stock from those having stock of par value, citing *Roberts & Schaefer Co.* v. *Emmerson, supra.* It was there said: "Although permissible, a franchise tax need not be based solely on the amount of business done or property owned within the State. It may be based on the nature of the business or the particular form in which it is carried on, so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the State." (Citing cases.) In *International Shoe Co.* v. *Shartel, supra,* the court refers to the *Latrobe case* for the reasons upon which it bases its judgment that the tax in the main case did not violate the equal protection clause of the constitution.

I am of the opinion that section 105 does not violate the equal protection clause of the Federal constitution and does not unreasonably burden interstate commerce. As was said in the *Latrobe case,* the constitution does not require that the State shall adopt the best possible system of taxation, and that, although permissible, a franchise tax need not be based solely on the amount of business done or

property owned within the State so long as it bears some real and reasonable relation to the privilege granted or to the protection of the interests of the State. The amount of issued stock is but one of the elements necessarily considered in determining what should be by the act fixed as a reasonable minimum franchise tax. The value of the privilege granted must also be considered. As was said by this court in *American Can Co.* v. *Emmerson, supra:* "It is, and has been, an underlying principle in the policy of this State in its treatment of foreign corporations, that they shall be subjected to the same rights and liabilities as domestic corporations of like character." The franchise tax imposed under section 105 is not designed to burden interstate commerce and does not directly do so. It bears a reasonable relation to the value of the privilege granted and is not open to the constitutional objections urged against it.

The decree of the circuit court should therefore be affirmed.