DIVERSIFICATION CONSULTANTS, INC., Plaintiff-Appellee, *v.* CANDY-GRAM, INC., Defendant-Appellant.

(No. 52928;

First District—October 30, 1970.

Robert H. Joyce, George J. Matkov, Dennis R. Homerin and Seyforth, Shaw, Fairweather & Geraldson, all of Chicago, for appellant.

Walter C. Clements, Michael D. Aufrecht and Taylor, Miller, Magner, Sprowl & Hutchings, all of Chicago, for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal by defendant, Candy-Gram, Inc., from a judgment on a jury verdict in the amount of $26,434.00. Plaintiff corporation was engaged in the business of providing financial consulting services and sources of capital for business enterprises. Defendant corporation was in need of immediate financial assistance. In June, 1961, Wm. H. Rentschler, President of the defendant corporation, entered into an agreement with Leslie Mickle, President of the defendant corporation whereby plaintiff was to study the financial structure and operations of the defendant corportation and develop a plan for the refinancing of the defendant corporation which would make available to the defendant money for use in the business. Defendant agreed to pay plaintiff a sum equal to 5 per cent of the total new money made available. The sum of $416,000 was made available to the defendant. Plaintiff claimed 5 per cent of said sum, $20,800, in accordance with said agreement and filed its complaint on June 5, 1962. The trial court entered judgment on June 22, 1967, on the jury's verdict for the plaintiff in the amount of $26,434, including interest from January 16, 1962.

Defendant claims that the trial court erred by failing to direct a verdict for defendant or in failing to dismiss the cause of action on the ground that plaintiff corporation's right to maintain an action in Illinois lapsed during the pendency of this cause. In the amendment to the amended answer filed June 21, 1967, defendant states that plaintiff's authorization to do business in Illinois was revoked on November 15, 1965, by the office of the Secretary of State of Illinois for plaintiff's failure to pay franchise taxes for 1965 and by reason thereof plaintiff corporation had no

legal existence and had no right to maintain an action at law or in equity. Defendant is relying on the Illinois Statute which provides:

"No corporation required to pay a franchise tax, license fee or penalty under this Act shall maintain any action at law or suit in equity until all such franchise taxes, license fees and penalties have been paid in full." Ill. Rev. Stat., Ch. 32, par. 157.142, 1934.

■■ At the time plaintiff did not pay its franchise tax, the plaintiff was not transacting business in Illinois. There was no tax due. It has been established that the franchise tax is a tax upon the exercise of a privilege and if the privilege is not exercised there can be no tax. *St. Louis Southwestern Railway Co. v. Stratton* (1933), 353 Ill. 273, 187 N.E. 498; *Sinclair Pipe Line Co. v. Carpentier* (1957), 10 Ill.2d 300, 140 N.E.2d 115.

■■ The defendant further contends that the contract on which plaintiff bases his claim was entered into by the defendant's President who acted outside the scope of his authority. Defendant agrees that the President of a corporation as an agent and representative has power in the ordinary course of business to execute contracts and bind the corporation. However, the defendant claims the President may not bind the corporation by contracts which exceed the scope of his authority due to their unusual or extraordinary character. Let us examine the record which led to the contract here involved. At an annual meeting of the Board of Directors of the defendant corporation, held on May 16, 1961, William H. Rentschler, then President and Treasurer of said corporation, reported the financial difficulties of the corporation. He was instructed by the Board to devote all of his time to find a solution to the corporation's financial problems. The minutes of said annual meeting of defendant's Board of Directors stated that Mr. Rentschler was instructed to "take whatever steps he could and use his efforts to obtain the required financing for Candy-Gram, Inc." Defendant cites a number of decisions to support its position. In our opinion none of the cases cited are applicable to the situation here involved.

Prior to the acceptance of the contract with the plaintiff, the defendant's Board of Directors was aware of the efforts made by Rentschler to develop a plan of financing. At a special director's meeting on October 31, 1961, Rentschler presented a proposed plan of financing devised by the plaintiff through Mickle, its President. Another plan of financing was also discussed and later accepted. Mickle was also instrumental in the latter plan. The record discloses that the defendant's Board of Directors was informed that Mickle claimed 5 per cent finder's fee of the total amount raised. Defendant's argument that the plaintiff had no written agreement has no merit. Mickle did have the commitment of the President of the defendant corporation. The record convinces us that Mickle

worked up the plan which was the basis for both proposals and he is entitled to a finder's fee.

Defendant maintains that the trial court improperly refused defendant's instructions numbers 12 and 14 which would have instructed the jury as to the powers of a corporate president acting on behalf of the corporation and as to the duties applied by law to one dealing with a corporate agent. Instruction 12: "The court instructs the jury that a president of a corporation has the power to employ the usual and necessary agents and employees needed by the corporation but in the absence of subsequent ratification, the corporation is not liable to pay for the services of one employed by the president acting without or beyond his authority." This instruction fails to define "when a corporate agent acts within the scope of his authority." The instruction was properly refused for it limits the authority of a corporate president to acts which may be conferred by subsequent ratification. The defendant's President had authority to act. This authority was conferred on him by his Board of Directors. This instruction was properly refused.

Defendant's instruction No. 14 is as follows: "The court instructs the jury that it is a rule of law that the plaintiff in dealing with the president agent for a corporation is bound at its peril to see that the agent has authority to bind the corporation in such transactions or that the agent is acting within the scope of his authority."

■■ A corporation by holding out an officer or other agent as having authority to act for it in such a way as to justify an inference or assumption that the officer or agent is acting within the scope of his authority is bound by it. (*Freeport Journal-Standard Publishing Co. v. Frederic W. Ziv* (1952), 345 Ill.App. 337, 103 N.E.2d 153.) The trial court was correct in not tendering said instruction.

The defendant also represents that there was no exclusive broker's contract. Defendant cites a number of cases pertaining to the hiring of brokers. None of these cases are applicable to the issues here involved. The services performed by Mickle went far beyond the duties of a broker in a real estate sale or other similar transaction. This plaintiff developed a plan of financing which was presented to and was fully discussed and considered by the Board of Directors. Plaintiff found a Raymond E. Daly, a source of financing to implement the plan. Although the Daly plan was rejected in favor of the Marvin R. Cole plan, the plaintiff created the basic plan. The Cole plan duplicated the monetary provisions of the basic plan developed by plaintiff. Even the defendant's only witness, James Fentress, admitted that the plan developed by plaintiff and the plan proposed by Cole were "roughly, equivalent in money." The plaintiff having developed the plan of financing adopted by defendant and

having found a source to implement that plan, a source which was ready, willing and able to provide the necessary financing, is entitled to the compensation claimed.

The defendant objects to the allowance of interest because the suit was based on an account stated. We agree with the defendant. There was no agreement between the parties that there was an amount owing.

For the reasons stated above, we affirm that part of the judgment allowing the plaintiff $20,800 and reverse the trial court in the allowance of interest.

Affirmed in part and reversed in part.

BURMAN, P. J., and MURPHY, J., concur.