PER CURIAM. 

(No. 6898—)

SAVIN BUSINESS MACHINES CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, SECRETARY OF STATE, Respondent.

*Opinion filed June 5, 1975.*

ARTHUR SPIRO, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; HOWARD W. FELDMAN, Assistant Attorney General, for Respondent.

BURKS, J.

This matter comes before the court for a ruling on respondent's motion for a summary judgment, pursuant to §57 of the Civil Practice Act, contending that there is no genuine issue as to any material fact in this matter, and that the respondent is entitled to judgment as a matter of law.

In its objections to said motion, claimant contends that there are material issues of fact; that respondent has misinterpreted the facts in the record; and that respondent has misapplied the relevant case law and statutes.

Claimant in this action seeks a refund for an alleged involuntary overpayment of its 1970 franchise tax in the amount of $9,060.53, being the difference between the $9,269.71 which claimant paid and the amount of tax actually owed, amounting to $209.18, as subsequently determined by the Secretary of State.

Claimant's statement of the facts, which respondent has not denied, strongly supports claimant's contention that it did not pay the tax voluntarily, but paid it under duress or compulsion. Yet, claimant apparently caused or contributed to the duress of which it complains.

Claimant concedes that its 1970 Annual Report was inadvertently filed late. Said report, due before March 1, was filed on November 4, 1970, some eight months late, accompanied by a letter explaining the failure to file timely. This letter stated that the corporation was in the process of moving its headquarters from New York City to Valhalla, New York, and that the aforementioned return was inadvertently overlooked.

Seven days later, on November 11, 1970, claimant paid the amount of $9,269.71 to the Sheriff of Cook County as demanded in a warrant issued by the Secretary of State for failure to pay franchise tax due the State of Illinois.

Nineteen days later, on December 1, 1970, the Secretary of State issued an adjusted statement for the franchise tax reducing the correct tax to only $209.18, apparently based on the Annual Report belatedly filed by the claimant.

In the meantime, on December 15, 1970, a copy of the receipt from the Sheriff of Cook County was mailed to the Secretary of State pursuant to advice received from his office that a copy of the receipt was necessary to effect a refund.

On January 20, 1971, claimant was advised by the Secretary of State that the statute contained no provision for the issuance of a refund inasmuch as the warrant held by the Sheriff of Cook County was in the correct amount at the time payment was made. The Secretary of State subsequently suggested that a petition for refund be filed with the Court of Claims.

The claim was filed in this court on September 8, 1972, some 18 months after the excessive tax was paid. We note that three hearings were scheduled but not held, for reasons not appearing in the record; that respondent's motion for summary judgment was filed September 3, 1974, and claimant's reply on September 11, 1974.

It would appear from the motion and reply that one issue of fact exists, namely, whether claimant paid the tax voluntarily or involuntarily. This, however, may be a question of law after accepting the facts as stated by the claimant. If the tax were paid voluntarily, as respondent contends, respondent correctly relies in its motion on our holding in *New Hampshire Fire Ins. Co.* v. *State of Illinois* (1954) *22 C.C.R. 60,* in which Judge Fearer stated the general rule at page 64 as follows:

". . . in the absence of a statute, a tax which is paid voluntarily, and not under duress or compulsion cannot be recovered."

This is a rather liberal restatement of the rule established in *People* v. *Lindheimer* (1939) *371 Ill. 367,* cited by the respondent. In *Lindheimer* our Supreme Court said at page 371:

"The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed and collected only in the method pointed out by express statute. [Citing cases] So, also, any right to a refund or a credit of taxes is purely of statutory origin, and in the absence of an authoritative statute, taxes voluntarily, though erroneously paid, cannot be recovered, nor even voluntarily refunded by a county, although there may be justice in the claim."

Claimant argues that neither of the above cited cases apply since in both cases the excess tax was paid "voluntarily". Although it is not alleged that the tax was paid under protest, claimant contends that its payment of the tax was made involuntarily and under duress or compulsion.

The duress or compulsion to which claimant refers may be summarized from claimant's affidavit as follows:

A warrant for the collection of franchise taxes and penalties was mailed to the Sheriff of Cook County on August 27, 1970, by the Secretary of State. The Sheriff then sent claimant a form letter demanding payment of $9,269.71 by November 16, 1970. The letter stated that failure to pay the full sum of $9,269.71 by November 16, 1970, would oblige the Sheriff "to make a return of the writ 'No part satisified'; whereupon, it will be obligatory under the statute for the Attorney General to take action to dissolve your corporation." Mr. J. Mills, of the Office of the Secretary of State, in a telephone conversation, allegedly warned claimant that failure to pay the full amount demanded by the Sheriff would obligate the Sheriff to serve the warrant and close claimant's Illinois office forthwith, thereby precluding claimant from doing business in the State of Illinois. In addition, Mr. Mills is reported to have said that the Attorney General's office would revoke claimant's authority to carry on corporate activities in Illinois.

In light of these express threatened actions, claimant states that it paid the sum of $9,269.71 on November 11, 1970, by certified check, "to avoid material and substantial economic and legal sanctions to claimant's business enterprise in this state." Claimant does not allege that the collection procedures employed were illegal nor contrary to established practice. Claimant contends that its payment was made under duress.

As authority for its contention that such duress is recognized as sufficient grounds for permitting a refund, claimant cites *Snyderman* v. *Isaacs (1964) 31 Ill. 2d 192*; and *Alton L. & T. Co.* v. *Rose (1904) 117 Ill. App. 83.* These cases do not significantly support claimant's position. In both cases the tax refund was denied. It was denied, not withstanding the alleged duress, primarily because the payment was *not made under protest.* In the first case cited by claimant, *Snyderman* at page 194, the Court does say. "The Complaint does not allege payment under protest, and it contains no factual allegations to support a theory of legal duress." The Court does not elaborate on the term "legal duress," but does announce that a tax payment is not rendered involuntary by the existence of a penalty for failure to pay.

In *Benzoline Motor Fuel Co.* v. *Bollinger (1933) 353 Ill. 600*, we find the Court referring to "virtual or moral duress" as being sufficient to prevent a payment made under its influence from being voluntary. The court also indicates that anticipated "disastrous effects to business," somewhat stronger but similar to claimant's contention in the case at bar, would amount to such duress. However, the key distinction from the case at bar is that, in *Benzoline*, the taxpayer made the payments *under protest* and the tax was held to be unconstitutional.

In the case at bar, claimant does not allege that its payment of tax was made under protest. We find no precedent in this state for awarding a tax refund unless the tax was paid *under protest* or, as stated in *Alton Light & Traction Co.* v. *Rose (1904) 117 Ill. App. 83* at page 86, "with notification of some sort equivalent to a reservation of rights. The mere fact that a tax was paid unwillingly or with complaint is of no legal importance," the Court said at page 85. This *Alton* case was decided

before our protest statute first became law in 1911, *Ill. Rev. Stat. (1973) Ch. 127 §172.* This protest statute is referred to in our 1954 decision, *N.H. Fire Ins. Co.* v. *State* (Supra) at p. 62, and our decision in that case would apparently have been different if the claimants had pursued their remedy as provided in the protest statute. Even when a protest accompanies the remittance, taxes cannot be recovered in equity unless certain requirements are met. See *Standard Oil Co.* v. *Bollinger (1929) 337 Ill. 335* in which the court held:

"The tax paid by a distributor of motor fuel under the invalid act of 1927 cannot be recovered in equity notwithstanding the distributor protested against the tax at each time a remittance thereof was made, as the payment was nevertheless voluntary."

In both of the cases cited by the claimant, and in all other cases referred to in this opinion, a tax refund was denied because claimants failed to act promptly to protect their rights and failed to avail themselves of the remedy which the statute affords in *Chapter 127, Section 172 Ill. Rev. Stat.* For the same reasons, we find that the instant claim must be denied.

A recent case very similar in facts to the case at bar, is *Western Union Telegraph Co.* (a New York Corporation) v. *Lewis* (1972) *7 Ill. App. 3d 285; 287 NE 2d 169.* Here, the claimant had filed an erroneous annual report overstating its capitalization. It then filed a supplemental annual report which inadvertently repeated the same clerical error. After receiving the Secretary of State's invoice for franchise tax based on the incorrect figures, claimant paid the excessive tax under protest, filed a second annual report with correct figures, and filed its suit for the over payment. The Secretary of State argued that the statute did not permit the claimant to correct errors in its report after June 25. In granting the requested franchise tax refund, the court said,

618

"The plaintiff here availed itself of a remedy which the statute affords. It applied for adjustment of the franchise tax, and it paid under protest."

"Taxes paid under protest may be recovered if improperly imposed, *Sinclair Pipe Line Co.* v. *Carpentier, 10 Ill.2d 300, 140 N.E. 2d 115; Ill. 422, 172 N.E. 705*, and Section 172 of the Statute expressly provides the procedure followed here."

In the case at bar, the claimant admittedly, though unintentionally, created the situation which resulted in its payment of an excessive franchise tax in 1970. Unfortunately, claimant failed to make its payment under protest pursuant to the statute cited above, and failed to avail itself of the remedy which the statute affords. Under these facts, and all the facts before us, considering in a light most favorable to the claimant, we conclude that the claim must be denied as a matter of law. Since claimant did not pay the tax under protest, although it had justifiable grounds and a statutory right to do so, the payment is deemed to have been made voluntarily. According to the weight of authority in this state, a tax paid under duress may be refunded by court order only if the tax were also paid under protest.

Summary judgment is a procedure to be encouraged in cases of this type as a method of facilitating the administration of justice. It is, however, a remedy granted by this court with some caution so as not to pre-empt the right of any claimant to present further facts or authorities that might have a significant bearing on our conclusion. In such cases a petition for rehearing will inavariably be granted for good cause shown and authorities cited according to our rules.

Respondents's motion for a summary judgment is hereby granted, and this claim is denied.