2019 IL App (1st) 181778

SIXTH DIVISION
December 6, 2019

Nos. 1-18-1778 & 1-18-1865 (cons.)

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| GLOBAL MAIL, INC., an Ohio Corporation, f/k/a Deutsche Post Global Mail (OH), Inc., and as Successor by Merger with Global Mail, Inc., a Delaware Corporation, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CH 02657 |
| JESSE WHITE, in His Official Capacity as the Illinois Secretary of State; and MICHAEL W. FRERICHS, in His Official Capacity as Illinois State Treasurer, | ) ) ) ) | |
| Defendants-Appellants. | ) ) ) ) | Honorable Moshe Jacobius, Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

## O R D E R

¶ 1   *Held*:   A foreign corporation that merges with another foreign corporation must file articles of merger with the Secretary of State and apply for authority to transact business in the state, but the corporation that ceases to exist following the merger does not continue to accrue Illinois franchise taxes; a misstatement by a corporation as to its state of incorporation on an annual report is a factual error that can be amended by a statement of correction; and the Business Corporation Act does not provide for an interest charge on a late initial franchise tax payment made by a foreign corporation.

¶ 2   The Illinois Secretary of State (Secretary of State) and the Illinois State Treasurer

(Treasurer) (collectively, defendants), appeal from the circuit court's rulings granting in part a motion for summary judgment filed by plaintiff Global Mail, Inc. (Global Mail) and denying in part defendants' cross-motion for summary judgment. Global Mail is now an Ohio corporation, but at one time was a Delaware corporation. We refer to it here simply as Global Mail, identifying the state of incorporation where necessary.

¶ 3    In its ruling, the circuit court found that, pursuant to the State Officers and Employees Money Disposition Act (Protest Monies Act), 30 ILCS 230/1, *et. seq.*, Global Mail was entitled to a refund of most of the taxes and penalties that it had paid under protest to the State of Illinois. The circuit court ruled that Global Mail had already paid the franchise taxes that it owed the State of Illinois from 2005 through 2016, that Global Mail was still required to pay the initial franchise tax it would have paid had it applied for authority to transact business in Illinois as an Ohio corporation, and that Global Mail also owed the State of Illinois a penalty for continuing to transact business here without paying that initial franchise tax. The circuit court further found, however, that Global Mail did not owe interest on that initial franchise tax and it rejected defendants' affirmative defenses. Defendants now challenge those rulings. For the reasons that follow, we affirm.

¶ 4                                    I. BACKGROUND

¶ 5    On August 4, 1987, Global Mail, Ltd., was incorporated under Delaware law. From 2001 through 2004, the Delaware corporation paid Illinois franchise taxes under the names Global Mail, Ltd., Deutsche Post Global Mail, Ltd., and finally Global Mail, Inc.

¶ 6    On December 20, 2004, a wholly owned subsidiary of Global Mail, Inc., was formed in Ohio, under Ohio law, and called Deutsche Post Global Mail (OH), Inc. On December 30, 2004, the Delaware corporation merged into the Ohio corporation, which then took on the name—Global

Mail, Inc.—of the Delaware corporation. The result of all of this was that Global Mail went from being a Delaware corporation to being an Ohio corporation.

¶ 7     After the merger, the new Ohio corporation, failed to provide the Secretary of State with a copy of its articles of merger or to apply for authority to transact business in Illinois. However, the company continued to pay Illinois franchise taxes as the Delaware corporation and to file annual reports with the Secretary of State that identified it as a Delaware corporation. In its 2012 annual report Global Mail failed to identify any state of incorporation and in its 2013 report it finally identified itself to the Secretary of State of Illinois as an Ohio corporation, something it continued to do until 2015.

¶ 8     On February 13, 2015, the Secretary of State sent Global Mail a notice of delinquency and levied against it a $368,845.32 franchise tax, $73,769.06 in penalties and interest, and a $75 annual report-filing fee for failing to file an annual report prior to January 1, 2015. Global Mail then submitted its 2015 annual report again listing Ohio as its state of incorporation. On July 15, 2015, the Secretary of State returned Global Mail's annual report from 2015 and the $17,998.93 the company had paid in franchise taxes for that year, explaining that the report and funds were being returned because Global Mail incorrectly listed itself as an Ohio corporation, instead of a Delaware corporation, and Global Mail owed additional franchise taxes.

¶ 9     The Secretary of State then sent a second notice on October 7, 2015, this time demanding $627,740.71 in payment. Global Mail responded on October 16, 2015, that it had already paid the applicable Illinois franchise taxes. As Global Mail explained, Global Mail, the Delaware corporation, no longer existed after December 30, 2004, and the franchise taxes the Secretary of State had credited to that now-defunct entity were really paid by the new Ohio corporation—the only Global Mail entity to survive the 2004 merger. The Secretary of State responded with a third

and final notice on January 25, 2016, detailing the balance that he believed the Ohio corporation owed for its application for authority to transact business in Illinois, franchise taxes, and the filing fee, now totaling $650,072.09. The notice stated:

"According to our review of this matter, the 2004 merger between the Ohio corporation and the Delaware corporation was never reported to the Secretary of State's Office. The Ohio corporation, as the survivor in the merger transacted business in Illinois without authority. Pursuant to Sections 13.05, 13.15 and 13.70, no corporation may transact business in Illinois prior to its having received the authority to do so. Thus, the franchise tax, filing fee, penalty and interest above were correctly calculated. Please make payment of the above amount within thirty (30) days of the date of this Third and Final Notice to avoid further action by the Secretary of State's Office."

¶ 10    While acknowledging the merger in this notice, the Secretary of State maintained that, from 2005 through 2016, Illinois was owed franchise taxes from both the Ohio corporation and the Delaware corporation, whose application to transact business in the state had never been formally withdrawn. In response Global Mail filed its 2016 annual report, reporting its state of incorporation as Delaware, and, in order to avoid further action by the Secretary of State, paid the $650,072.09 under protest pursuant to section 230/2 of the Protest Monies Act. 30 ILCS 230/2 (West 2016). Then, on February 24, 2016, Global Mail filed the present action against defendants for a declaratory judgment or, in the alternative, equitable recoupment, arguing that the Ohio corporation had already paid all required franchise taxes since 2005—although those taxes had incorrectly been attributed to the now nonexistent Delaware corporation—and that the Secretary of State's failure to acknowledge this fact effectively subjected the Ohio corporation to a double tax.

¶ 11 The following day, on February 25, 2016, Global Mail formally withdrew the Delaware corporation's authority to transact business in Illinois and filed a certified copy of the certificate of merger with the Secretary of State. Global Mail then moved for a preliminary injunction pursuant to the Protest Monies Act enjoining the Illinois Secretary of State, pending the final disposition of its action, from paying or depositing the $650,072.09 paid under protest to the Treasurer's general fund. 30 ILCS 230/2 (West 2016). The court granted Global Mail's injunction on March 22, 2016.

¶ 12 Defendants moved to dismiss Global Mail's complaint, but the circuit court denied their motion. Defendants then filed their answer, which included seven affirmative defenses: statute of limitations, voluntary payment doctrine, failure to exhaust administrative remedies, ripeness, mootness, laches, and equitable estoppel. They also filed a counterclaim arguing that "[t]he Delaware Corporation and the Ohio Corporation constituted separate and distinct corporations incorporated under the laws of different states" and thus separately owed franchise taxes for the privilege of doing business in Illinois.

¶ 13 Global Mail moved to strike defendants' counterclaim and affirmative defenses and filed a renewed motion for summary judgment arguing that no franchise tax was due because the Delaware corporation had not existed after 2004 and the Ohio corporation, as the only Global Mail still in existence, had been paying franchise taxes since that time. Global Mail argued that the Secretary of State's actions were arbitrary and capricious and Global Mail's payment made under protest should be returned. Defendants filed their own renewed motion for summary judgment arguing that Global Mail was not entitled to a refund and that each of their affirmative defenses precluded Global Mail from pursing its claim. On July 17, 2018, the circuit court issued a 60-page opinion ruling on these motions.

¶ 14    The circuit court granted Global Mail's motion to strike defendants' counterclaim, finding that defendants failed to state a cause of action, but denied Global Mail's motion to strike defendants' affirmative defenses. The court granted in part and denied in part both parties' motions for summary judgment.

¶ 15    The circuit court found that the Delaware corporation no longer existed under Illinois law after the December 30, 2004, merger. The court reasoned that while Illinois law does require a domestic corporation to file articles of merger in order for a merger to be recognized, it does not require two merging foreign corporations to do the same. Rather, the court determined, it is the law of the state of incorporation that determines that corporation's existence. Therefore, as soon as the Delaware corporation ceased to exist in Delaware, which occurred at the time of the merger, it ceased to exist in Illinois. The court further held that the Delaware corporation had no franchise tax liability once it ceased to exist.

¶ 16    The circuit court also determined that the Ohio corporation was required to apply for authority to transact business in Illinois after the merger and the Secretary of State was correct in imposing the initial franchise tax of $30,911.64 on it. The court ruled that, although Global Mail incorrectly listed its state of incorporation as Delaware from 2005 through 2012, this did not change the fact that defendants accepted the money paid as franchise taxes. As the court explained in part in its lengthy and detailed opinion:

> "Global Mail Delaware could not have transacted any business after the merger occurred. Therefore, there was no basis for any franchise taxes to be assessed against Global Mail Delaware after the merger and Global Mail Delaware could not have been paying franchise taxes when it ceased to exist.

> * * *

Illinois does not favor duplicate payments or overpayments of taxes.

*** Allowing [the Illinois Secretary of State] to ignore that it accepted franchise tax payments from Global Mail Ohio from 2005 through 2016, even though it did so under the belief that it was accepting franchise taxes from Global Mail Delaware would permit the [Illinois Secretary of State] to receive an overpayment of franchise tax payments from Global Mail Ohio."

¶ 17    The circuit court additionally determined that Global Mail should be able to amend those of its annual reports listing Delaware as its state of incorporation in order to "correct the record and remove any ambiguity regarding whether Global Mail Ohio or Global Mail Delaware submitted annual reports for those years." However, the court also noted that, "the statement of correction is not necessary to account the franchise taxes paid from 2005 to 2016 to Global Mail Ohio." The court granted defendants' renewed motion for summary judgment against Global Mail's claim for equitable recoupment, stating "the circumstances under which equitable recoupment can apply are not present in this case" and determined that defendants' actions in assessing Global Mail franchise taxes were not arbitrary and capricious. Finally, the court rejected defendants' affirmative defenses.

¶ 18    In its July 17, 2018, opinion, the court directed the Secretary of State to submit a petition detailing the amount Global Mail owed because of its failure to file an application for authority to transact business in December of 2004, following the merger, as required by the Business Corporation Act. 805 ILCS 5/13.05, 5/13.15 (West 2016). Defendants submitted the requested petition. According to defendants, Global Mail was required to pay $30,911.64 for the initial franchise tax, $150 as a filing fee for the application for authority to transact business in Illinois that the Ohio corporation should have filed, $3,106.16 as a penalty under the Business Corporation

Act, and $82,843.20 in interest, totaling $117,011.00. Global Mail contested the $82,843.20 in interest charges.

¶ 19   The circuit court agreed with Global Mail, finding that the Business Corporation Act "already outlines a specific penalty to be imposed on foreign corporations for transacting business in Illinois without authority." The court noted that the section of the Act defendants relied on for their interest charge applied only to late filings of reports of issuance of shares or reports of an increase in paid-in capital. The court ordered Global Mail to pay the other amounts and for the remaining $615,904.29 of the $650,072.09 held in the Protest Monies Fund to be returned to it.

¶ 20   This appeal followed.

¶ 21                           II. JURISDICTION

¶ 22   The circuit court entered its final judgment on August 13, 2018, and defendants filed their timely notice of appeal on August 15, 2018. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 23                           III. ANALYSIS

¶ 24   Defendants challenge the circuit court's rulings specifically as to whether Global Mail 1) still owed franchise taxes for 2005 through 2016, notwithstanding the payments made by it during that time period that were credited to the no-longer-existing Delaware corporation; 2) could file a statement of correction as to its state of incorporation; or 3) owed interest for its failure to make a timely initial franchise tax payment. Defendants also challenge the circuit court's rejection of three of their affirmative defenses: the voluntary payment doctrine, the statute of limitations, and failure to exhaust administrative remedies.

¶ 25   Because this appeal requires us both to construe a statute and to review the circuit court's

ruling on the parties' cross-motions for summary judgment, our review is *de novo*. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008) (statutory interpretation); *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008) (review of summary judgment).

¶ 26        A. Global Mail's Franchise Tax Payments for 2005 Through 2016

¶ 27    Defendants first argument is that Global Mail, the current corporation incorporated in Ohio, owes franchise taxes for the years 2005 through 2016 and is entitled to no credit for the taxes that it paid but which were credited to Global Mail, the Delaware corporation. Defendants' position is that *both* corporations owed franchise taxes in Illinois from 2005 through 2016, even though the Delaware corporation has not existed since the 2004 merger.

¶ 28    Defendants argument rests on the fact that the Delaware corporation failed to withdraw its authority to transact business in Illinois until February 25, 2016, and the Ohio corporation transacted business in the State, albeit without proper authority, throughout that same period.

¶ 29    The Business Corporation Act requires foreign corporations to apply for the authority to transact business in Illinois with the Secretary of State before conducting business in the state. 805 ILCS 5/13.05 (West 2016). Once a corporation receives that authority to transact business, it "shall, until a certificate of revocation has been issued or an application for withdrawal shall have been filed as provided in this Act, enjoy the same, but no greater rights and privileges as a domestic corporation" and "shall be subject to the same duties, restrictions, penalties, and liabilities." 805 ILCS 5/13.10 (West 2016).

¶ 30    A foreign corporation that fails to meet this requirement is still required to pay those taxes and is also subject to a penalty. Specifically, a corporation that operates without authority from the Secretary of State:

"is liable to this State, for the years or parts thereof during which it transacted business in

9

this State without authority, in an amount equal to all fees, franchise taxes, penalties and other charges that would have been imposed by this Act upon the corporation had it duly applied for and received authority to transact business in this State as required by this Act, but failed to pay the franchise taxes that would have been computed thereon, and thereafter filed all reports required by this Act." 805 ILCS 5/13.70(c) (West 2016).

¶ 31 It is undisputed that Global Mail, the surviving Ohio corporation, failed to file its articles of merger with the Secretary of State as required by the Business Corporation Act until February 25, 2016, and was thus not authorized to transact business in Illinois. We agree with defendants therefore that, as a result, the Ohio corporation is liable for "all fees, franchise taxes, penalties and other charges" that would have been imposed had it filed the appropriate forms.

¶ 32 The parties' real dispute is over whether the Delaware corporation also continued to owe taxes during this period. Defendants' position is that the Ohio corporation cannot get credit for the taxes that it paid that were credited to the Delaware corporation because—at least according to the Secretary of State's records—both the Delaware and the Ohio corporations continued to exist from 2005 through 2015 and therefore both owed franchise taxes for that period. The circuit court disagreed and so do we.

¶ 33 The parties do not dispute that under Delaware law Global Mail's Delaware corporation ceased to exist after the merger. The Delaware statute provides:

"When any merger or consolidation shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations, except the one into which the other or others of such constituent corporation have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 such

10

corporations." 8 Del. C. § 259 (West 2016).

¶ 34    We have long recognized that the law of the incorporating states is controlling as to corporate existence:

> "The manner of doing business in a foreign jurisdiction may be controlled by the statutes of that jurisdiction, but its organization and the manner of its dissolution and its obligations thereunder are subject to the control of the State which gave it birth. Under the rule of comity existing between the between the various States, *the rights of the State creating the corporation are recognized in so far as they deal with its corporate life and existence*." (Emphasis added.) *Perry v. Western Motor Car Co.*, 279 Ill. App. 195, 203 (1935).

¶ 35    Section 11.40 of the Business Corporation Act regulates the effective date of a merger for purposes of a *domestic* corporation's tax obligations. 805 ILCS 5/11.40 (West 2016) ("The merger *** shall become effective upon filing the articles of merger *** by the Secretary of State). However, as *Perry* and other cases have made clear, the state of incorporation controls as to corporate existence. See *Blankenship v. Demmler Manufacturing Co.*, 89 Ill. App. 3d 569, 573 (1980) ("A corporation can exist only under the express laws of the state by which it was created."); *Matter of Morris*, 30 F. 3d 1578, 1582 (7th Cir. 1994) (stating "Illinois courts look to the laws of a company's state of incorporation when deciding issues regarding a corporation's existence").

¶ 36    The Business Corporation Act is fully consistent with this understanding. Section 13.05, governing foreign corporations, states that "nothing in this Act contained shall be construed to authorize this State to regulate the organization or the internal affairs of such corporation." 805 ILCS 5/13.05 (West 2016).

¶ 37    Defendants cite *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 365-66 (2007), for the proposition that Illinois law controls the existence of a foreign corporation, and thus, a non-

11

surviving corporation, even one incorporated under another state, continues to exist after a merger until articles of merger have been filed by the secretary of state. While there is language in that case to this effect, as the circuit court correctly pointed out, the statement was *dicta,* since the outcome there was not controlled by when the corporation ceased to exist. *Id.* at 366-67. Such *dicta* is not binding here (*Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 899, 907 (2009)), and read in context there is nothing in *NDC LLC* to suggest that the second district intended to disagree with the long line of Illinois cases that have recognized that corporate existence following a merger is controlled by the state of incorporation. The issue in *NDC LLC* was whether NDC LLC was liable for franchise payments owed by a corporation that had clearly existed when the franchise taxes were incurred, which is completely different from this case, where defendants are claiming that Global Mail's Delaware corporation somehow incurred tax liability after it ceased to exist.

¶ 38    We agree with the circuit court and with Global Mail that Delaware law dictates corporate existence and, once the Delaware corporation no longer existed under Delaware law, it no longer existed for purposes of incurring franchise taxes. Thus, the taxes that Global Mail's Ohio corporation paid should have been credited to the Ohio corporation, even if they were improperly designated as being for the Delaware corporation.

¶ 39    Defendants also argue that the circuit court erroneously cited *Sinclair Pipe Line Co. v. Carpentier*, 10 Ill. 2d 300, 140 N.E.2d 115 (1957), to find that no franchise taxes were due from Global Mail's Delaware corporation when it ceased to exist because it could no longer transact business in Illinois. Defendants are correct that under the Business Corporation Act, foreign corporations are taxed for the "*privilege* of exercising its authority to transact such business in this State." (Emphasis added.) 805 ILCS 5/15.65 (West 2016). Defendants are also correct that, in

1959, the General Assembly added the "privilege of exercising" language to the Act in order "to change the law as announced in *Sinclair Pipe Line Co. v. Carpentier*, 10 Ill. 2d 300, 140 N.E.2d 115 (1957), by which foreign corporations *owning property in Illinois but doing only an interstate business had avoided franchise taxes.*" (Emphasis added.) Annotations to 1959 Version of 1933 Business and Corporations Act. However, this amendment was targeting corporations who found a loophole in the tax code by the way they structured their business, not corporations that no longer existed and thus could not possibly have enjoyed the "privilege" of exercising the authority to transact business in the state.

¶ 40    Defendants also argue that the circuit court incorrectly relied on principles of equity in deciding this issue when "[a]ll of the necessary guidance to properly dispose of this matter is contained in the plain language of the statutory architecture of the [Business Corporation Act]." It is true that principles of equity are inappropriate where the plain language of a statute resolves the issue. *First Federal Savings & Loan Association v. Walker*, 91 Ill. 2d 218, 227 (1982). However, in interpreting the statute, certain principles of statutory interpretation are appropriate. We have long recognized that: "Although not constitutionally forbidden, double taxation is never presumed and is valid only where the legislature has unequivocally intended to impose such taxation." *People for Use of Bernardi v. Bethune Plaza, Inc.*, 124 Ill. App. 3d 791, 793 (1984). In addition, "taxing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer." *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 202 (1989). When construed in accordance with these principles, the statutory language fully supports the circuit court's rulings.

¶ 41    In sum, Global Mail's Delaware corporation did not exist after 2004 and was not liable for

13

any taxes after that point. Accordingly, the taxes paid by Global Mail's surviving Ohio corporation, though incorrectly attributed to the Delaware corporation, satisfied the franchise tax obligations of the Ohio corporation—the corporate entity that actually paid the taxes and the only one that existed and could possibly have exercised the "privilege" of doing business in Illinois during the relevant period.

¶ 42                    B. A Statement of Correction as to the State of Incorporation

¶ 43    Defendants also ask us to reverse the court's finding that Global Mail, the Ohio corporation, was permitted, under the Business Corporation Act, to file a statement of correction for its annual reports. The correction that the circuit court allowed was for Global Mail to change its annual reports from 2005 to 2012 to correctly reflect that its state of incorporation was Ohio, rather than Delaware. We agree with the circuit court that this was permitted by the Act.

¶ 44    The Business Corporation Act provides a method to correct factual errors in reports:

"Whenever any instrument authorized to be filed with the Secretary of State under any provision of this Act has been so filed and, as of the date of the action therein referred to, contains any misstatement of fact, typographical error, error of transcription or any other error or defect or was defectively or erroneously executed, such instrument may be corrected by filing, in accordance with Section 1.10 of this Act, a statement of correction." 805 ILCS 5/1.15 (West 2016).

¶ 45    Section 150.300 of the Illinois Administrative Code provides further amplification on what an "error" or "defect" means under the statute:

"Matters deemed 'errors' or 'defects' for which a statement of correction may be filed are facts that have been misreported in a document filed with the Secretary of State's Office and do not include any other matter which in retrospect is considered a mistake or which

14

as to the action reported reflects a subsequent event." 14 Ill. Admin. Code § 150.300(a) (2007).

¶ 46    Defendants argue that Global Mail, should not be able to file a statement of correction as to its state of incorporation because "Global Delaware's failure to comply with the requirements under section 13.45 of the [Business Corporation Act] to withdraw from Illinois before February 25, 2016 *** is not a matter qualifying for a Statement of Correction." Defendants' argument is essentially that a provision meant to correct clerical errors cannot be used to retroactively excuse a corporation for failing to file an application for withdrawal when it merges with another entity. But the error being corrected is not this failure to file the application for withdrawal. As we have already discussed, that failure did not mean that the Delaware corporation continued to exist and accrue franchise taxes, notwithstanding that it no longer existed under Delaware law. In keeping with our holding, that the only corporation that accrued taxes during this period was the Ohio corporation, and for the sake of accurate recordkeeping, Global Mail's annual reports should be corrected to reflect its true state of incorporation. Section 1.15 of the Act provides an appropriate avenue for doing. The circuit court did not err by allowing such corrections.

¶ 47                    C. Interest on the Initial Franchise Tax

¶ 48    The circuit court found that Global Mail was required to pay the initial franchise tax of $30, 911.64 and to pay penalties, pursuant to the statute, because it failed to file for authority to transact business as an Ohio corporation. Defendants contend that the circuit court erred in not also charging Global Mail what defendants calculated was $82,843.20 in interest, at 2% per month for 134 months, on the initial franchise tax that should have been paid in December of 2004. We again disagree.

¶ 49    As discussed above, the Business Corporation Act details the consequences of transacting

15

business in Illinois without having obtained the proper authority to do so. These include the requirement that the corporation pay: "an amount equal to all fees, franchise taxes, penalties and other charges that would have been imposed by this Act *** had the corporation properly applied." 805 ILCS 5/13.70(c) (West 2016). The Act also imposes "a penalty of either 10% of the filing fee, license fee and franchise taxes or $200 plus $5 for each month or fraction thereof in which it has continued to transact business in this State without authority therefor, whichever penalty is greater" for failures to file an application for more than 60 days. 805 ILCS 5/13.70(c) (West 2016). The circuit court agreed with defendants that this initial franchise tax and penalty were due and owing. Defendants' position is that Global Mail also owes the monthly interest stated above as an additional penalty.

¶ 50    Defendants rely on section 16.05 of the Business Corporation Act, which states:

"Each corporation, domestic or foreign, that fails or refuses *to file a report of issuance of shares or increase in paid-in capital* within the time prescribed by this Act is subject to a penalty on any obligation occurring prior to January 1, 1991, and interest on those obligations on or after January 1, 1991, for each calendar month or part of month that it is delinquent in the amount of 2% of the amount of license fees and franchise taxes provided by this Act to be paid on account of the issuance of shares or increase in paid-in capital." (Emphasis added.) 805 ILCS 5/16.05(b) (West 2016).

¶ 51    It is clear to us from the plain language of this section that the interest charge applies only to reports of the issuance of shares or an increase in paid-in capital. An application for the authority to transact business in Illinois is neither of those two things.

¶ 52    Defendants argue that this section must be read in concert with the other sections of the Business Corporation Act. Specifically, defendants look to section 14.15 of the Act, which

16

provides that "the articles of incorporation of each domestic corporation shall be deemed to be the first report of the issuance of shares of such corporation." Defendants argue:

> "Therefore, in connection with the filing by a domestic corporation of [articles of incorporation], a domestic corporation pays an initial franchise tax based on the corporation's paid-in capital represented in Illinois. [citation] The [articles of incorporation form] reports the domestic corporation's first issuance of shares and paid-in capital. [citation] A domestic corporation is subject to interest under section 16.05(b) for the untimely reporting of underreported paid-in capital on its Articles of Incorporation."

¶ 53    Defendants point out that the Business Corporation Act subjects foreign corporations to the same liabilities as domestic corporations. 805 ILCS 5/13.10 (West 2016). They argue that a foreign corporation's application to transact business in Illinois, under section 13.15 of the Act (805 ILCS 5/13.15 (West 2016)), is "the comparable report" to a domestic corporation's articles of incorporation. While these may be similar reports, the Business Corporation Act specifically states that the articles of incorporation for a domestic corporation "*shall be deemed* to be the first report of the issuance of shares of such corporation." (Emphasis added.) 805 ILCS 5/14.15 (West 2016). There is no similar provision stating that an application for the authority to transact business in Illinois, under section 13.15, "shall be deemed to be first report" of the issuance of shares for a foreign corporation. Because the statute does not "deem" the application to transact business in Illinois to be a report of the issuance of shares, there is no basis on which to find that the interest provision in section 16.05(b) for a "report of issuance of shares" applies here. Therefore, the delay in filing this application is not the equivalent of a delay in filing a report on the issuance of shares, which would subject Global Mail to interest charges under that section.

¶ 54    In short, there is no support in the Business Corporation Act for finding that the legislature

17

meant a late "report of issuance of shares or increase in paid-in capital" to be equated with a late application to transact business in Illinois. We agree with the circuit court that the Business Corporation Act does not provide for monthly interest as an additional penalty on late applications for the authority to transact business in Illinois and that the circuit court correctly calculated the amount that Global Mail owes for its belated initial franchise tax payment.

¶ 55                                D. Affirmative Defenses

¶ 56    Defendants also argue that the circuit court erred in rejecting their affirmative defenses. Specifically, they argue that the voluntarily payment doctrine bars Global Mail's recovery, Global Mail violated the Business Corporation Act's statute of limitations, and Global Mail failed to exhaust its administrative remedies. We consider each affirmative defense in turn.

¶ 57                             1. Voluntary Payment Doctrine

¶ 58    Defendants contend that the voluntary payment doctrine bars Global Mail "from seeking a refund of amounts it voluntarily paid on behalf of Global Delaware in connection with Global Delaware's 2005-2015 Annual Reports."

¶ 59    Under the voluntary payment doctrine "money voluntarily paid under a claim of right to the payment and with knowledge of facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908). Under this doctrine, a party must "not only show that the claim asserted was unlawful," but also "that the payment was not voluntary," *i.e.*, that the payment "was made under the influence" of "some necessity which amounted to compulsion." *Id.*

¶ 60    Global Mail's only refund request is for the taxes it paid under protest, a request governed by the Protest Monies Act. Payments made under this statute are by their very nature involuntary. Defendants' claim that Global Mail is seeking a refunded of the taxes it paid from 2005 through

2015 rests on the argument that we have already rejected that Global Mail's Delaware corporation continued to owe taxes until it withdrew its authority to transact business on February 25, 2016. Based on the position, which we have accepted, that only the Ohio corporation owed those taxes, Global Mail is simply asking for the tax payments it already made to be properly attributed to the Ohio corporation. Because no refund is being sought, the voluntary payment doctrine does not apply here.

¶ 61                                     2. Statute of Limitations

¶ 62     Defendants also claim that the Business Corporation's three-year statute of limitations bars Global Mail from being refunded franchise taxes that were attributed to its Delaware corporation, because Global Mail did not file a petition for refund within this three-year deadline.

¶ 63     The Business Corporation Act states that "[n]o refund shall be made unless a petition for such shall have been filed in accordance with Section 1.10 of this Act within three years after the amount to be refunded was paid." 805 ILCS 5/1.17(a)(1) (West 2016). Defendants are correct that Global Mail did not file a petition for refund within three years. But the point is that Global Mail is not seeking a refund under the Business Corporation Act. It is merely asking defendants to credit the franchise taxes paid on behalf of a nonexistent entity to the entity that actually paid those taxes. The Business Corporation Act's statute of limitations does not apply.

¶ 64                          3. Failure to Exhaust Administrative Remedies

¶ 65     Finally, defendants argue that Global Mail "is not permitted to utilize the Protest [Monies] Act to avoid exhausting its administrative remedies in seeking a refund for franchise taxes." Defendants claim that Global Mail is attempting to use the Protest Monies Act to recoup taxes paid on behalf of Global Mail, the Delaware corporation.

¶ 66     The Administrative Review Law, which applies to "every action to review judicially a final

decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of *** the Act," bars parties from litigating in court until they have received a final administrative decision. 735 ILCS 5/3-102 (West 2016).

¶ 67    Under the Business Corporation Act, any revocation of the certificate of authority to transact business in Illinois by the Secretary of State or any failure by the Secretary of State "to approve any articles of incorporation, amendment, merger, consolidation, dissolution, petition for reduction or refund, or any other document required by [the Business Corporation] Act" falls under the purview of the Administrative Review Law. 805 ILCS 5/1.45 (West 2016).

¶ 68    The Protest Monies Act creates an avenue to immediately challenge money paid to the state of Illinois. Specifically, under the Protest Monies Act, a taxpayer tenders their payment under protest and the recipient of the funds—in this case the Secretary of State—then notifies the Treasurer, who places the money in the protest fund. 30 ILCS 230/2a, 2a.1 (West 2016). After 30 days, the money may be transferred into the appropriate fund it was originally intended for, unless the party that made the payment under protest secures a temporary restraining order or a preliminary injunction restraining the transfer of the funds. 30 ILCS 230/2 (West 2016). It is undisputed that Global Mail followed these procedures.

¶ 69    Our supreme court has made clear that "where a system of agency or departmental hearings is available and the final decisions of the department or agency is reviewable under the Administrative Review Act, a taxpayer may seek judicial determination under the Protest [Monies] Act of the propriety of a disputed tax without exhausting the administrative remedies." *Chicago & Illinois Midland Ry. Co. v. Department of Revenue*, 63 Ill. 2d 474, 478 (1976). The court specifically held that the Protest Monies Acts provides "an alternative to the departmental hearings reviewable under the Administrative Review Act." *Id.* at 484.

¶ 70    Defendants argue that Global Mail is improperly trying to "use the Protest [Monies] Act to recover franchise taxes previously paid on behalf of its Delaware corporation." But, again, Global Mail is not attempting to recover any taxes except the taxes paid under protest. The taxes "paid on behalf of Global Delaware" were incorrectly credited to Global Delaware because Global Mail, the Ohio corporation, was the only corporation in existence. Therefore, Global Mail, the Ohio corporation, is disputing the assessment of additional taxes against it. The Protest Monies Act applies, and Global Mail, having followed the necessary procedures, was permitted to avail itself of the Protest Monies Act without exhausting its administrative remedies.

¶ 71                        IV. CONCLUSION

¶ 72    For the reasons stated above, we affirm the circuit court's decision.

¶ 73    Affirmed.